CITY OF CENTER LINE v 37TH DISTRICT JUDGES

Docket No. 59520. Argued March 8, 1978 (Calendar No. 7).—Decided November 20, 1978.

The 37th Judicial District consists of two municipal corporations, the City of Warren and the City of Center Line, the latter completely surrounded by Warren. Center Line had adopted a resolution under the district court act to retain its municipal court, but the larger city, Warren, did not, and consequently the resolution of Center Line was ineffective. One judge of the district court had been sitting in the Center Line City Hall; however, when Warren constructed a new court building with four courtrooms Center Line concluded that the district judges intended to move all of the district court's operations to the Warren court building. Center Line brought an action against the 37th District Judges to compel them to sit in Center Line to hear all civil and criminal cases arising out of transactions within that city. The Macomb Circuit Court, Howard R. Carroll, J., granted a judgment permitting the defendants to transact the business of the court at any place in the district, except for actions for ordinance violations and small claims arising within Center Line. The Court of Appeals, T. M. Burns, P.J., and Quinn and M. F. Cavanagh, JJ., affirmed but modified the judgment to provide that arraignments on warrants and preliminary examinations on offenses arising in Center Line should also be heard in Center Line (Docket Nos. 27812, 28264). Plaintiff appeals. *Held:*

1. The district court act abolished existing municipal courts except those that were resurrected under the option section which allowed retention of a municipal court by resolution of governing bodies of more than 50% of the population of the district. Even if the option section were held to be unconstitu-

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts § 23.
[2, 3, 9] 46 Am Jur 2d, Judges § 5.
[4, 5] 20 Am Jur 2d, Courts § 36.
[6] 21 Am Jur 2d, Criminal Law § 399.
[7] 77 Am Jur 2d, Venue § 2.
[8] 21 Am Jur 2d, Criminal Law § 404.

tional because it violated due process and equal protection by giving Warren control of Center Line's option, that section would clearly be severable from the remainder of the district court act, and the holding would not re-establish the Center Line municipal court, which was abolished by a different section of the act.

2. Center Line argues that the requirement in the district court act that the district court shall "sit" at each city having a population of 3,250 or more requires a resumption of the former practice that one of the four judges of the 37th Judicial District be located full time in Center Line. If the district business is to be evenly distributed among the four judges, that practice would require some cases arising in Warren to be heard in Center Line. The Court will not interpret the legislative language to achieve a result which the Legislature could not have intended. The statute does not require a full-time judge in Center Line, only such services of a judge as may, consistent with the judicial needs of the district, be required to transact whatever judicial business is brought in the city.

3. The statute requires only that some judicial business be conducted in Center Line. The question remains as to what then *must* be heard in Center Line. The parties agree that by statute the small claims division of the 37th Judicial District must sit in Center Line once each 30 days. The district court act does not require that general civil cases be tried at a specific location within the 37th Judicial District. In adopting by reference the venue provisions of the Revised Judicature Act, but substituting "district" for "county", the Legislature has determined that a judicial district is a proper forum for cases arising in that district. It is clear from the venue provisions of the statute that actions for Center Line ordinance violations must be heard in Center Line. The new venue provision for preliminary examination for statutory offenses, 1970 PA 213, insofar as it conflicts with venue provisions of the district court act, controls as the more recent expression of legislative intention. Therefore, the circuit court correctly determined that proceedings in state criminal actions cognizable in district courts, and preliminary examinations in cases not cognizable in district courts, may be heard in Warren because no part of Center Line is more than one mile from Warren.

4. The circuit court correctly determined what must be heard in Center Line. That does not preclude a request to invoke the Court's administrative or rule-making authority if it can be demonstrated that judicial resources can be more effectively used in the 37th Judicial District.

Justices Williams and Levin, joined by Chief Justice Kav-

anagh, concurred in part and dissented in part. They agreed that the statute does not require a full-time judge in Center Line, but only such services as may be required to transact judicial business brought in the city. They would hold, however, that the Legislature, in requiring that the court shall sit at each city within the district having a population of 3,250 or more, intended that it shall sit to transact all judicial business, civil and criminal, which, under the statutes, *may* be brought before it, and that the venue provisions do not impliedly confer on the judges any power to limit the scope of the sitting.

1. The venue statutes do not empower the district judges to direct that all cases be heard in one place in the district, nor to refuse to sit in a statutorily designated place of sitting. The venue provisions of the statute do not confer judicial power, but concern a "proper" county or district in which to commence and try an action, to protect a defendant from being required to answer a complaint in an inappropriate county or district. The statutory designation of multiple places of sitting in the district would not have been made if the Legislature had intended that the judges determine where within the district the court shall sit. The construction by the majority deprives the words "shall sit" of most of their meaning.

2. By the process or reasoning applied by the majority to civil actions generally, the judges would be empowered to require that all judicial business except ordinance violations, including small claims, be heard in Warren. Yet the issue of small claims is avoided because the parties have agreed that the small claims division must sit in Center Line once each 30 days.

3. The amendment to the Code of Criminal Procedure which provides that where an offense is committed on or within one mile of the boundary of any political subdivision venue is proper in any political subdivision concerned is designed to facilitate prosecutions for offenses committed so close to the boundary of a political subdivision that it is difficult or impossible to determine the subdivision in which they occurred. Its construction as not requiring that charges of state law violations which occurred in Center Line be heard in Center Line because no part of Center Line is more than one mile from Warren means that the Legislature conferred on judges of a judicial district having the geographic configuration of the 37th district the power to concentrate all state law violations in one place of sitting, but did not confer such power where a statutorily designated subdivision is not in its entirety within one mile of its boundary. Such an intent is anomalous; had the Legisla-

ture wished to confer such power on these or all district judges, it would have done so in a more congruous manner.

4. The district court act bears the hallmarks of legislative compromise for many cities which stood to lose their municipal courts under the act, and were designated as places in which the district court shall sit. It is apparent that the commitment was not that the court would sit in some truncated manner at the pleasure of the judges, but, rather, that it would sit to conduct the usual business of the court. Surely the Legislature did not intend that the facilities of a former municipal court would be maintained to hear only ordinance violations. It may well be that it would better serve the convenience of some litigants and lawyers, the judges and court personnel, and be more efficient and less expensive to concentrate all the business of this district court in one place. To do so without legislative authorization is, however, contrary to the spirit of the act designating Center Line as a place where the court "shall sit".

5. An order should be entered declaring that the 37th Judicial District shall sit in Center Line to hear all business properly brought there under the jurisdictional and venue provisions of the state and that the judges of the court are not empowered to limit·the judicial business that may be brought in Center Line.

74 Mich App 97; 253 NW2d 669 (1977) reversed in part.

OPINION OF THE COURT

1. COURTS — DISTRICT COURTS — STATUTES — CONSTITUTIONAL LAW — SEVERABILITY.

The district court act abolished existing municipal courts by one section of the act, except for those that were resurrected under another option section which permitted retention of existing municipal courts by resolution of the governing bodies of more than 50% of the population of the district; even if the option section were held unconstitutional because in effect it gave control of one city's option to another city, the option section would be severable, and such a holding would not re-establish the abolished municipal courts (MCL 600.9921, 600.9928; MSA 27A.9921, 27A.9928).

2. COURTS — DISTRICT COURTS — STATUTES — WORDS AND PHRASES — "SIT".

The requirement in the district court act that in districts of the third class the court shall "sit" at each city having a population of 3,250 or more should not be interpreted to require a full-time district judge to be located in a city within the district

where the case load does not require a full-time judge, a result which the Legislature could not have intended (MCL 600.8251[3]; MSA 27A.8251[3]).

3. COURTS — DISTRICT COURTS — STATUTES — WORDS AND PHRASES — "SIT".

The section of the district court act which provides that a district court shall "sit" at each city having a population of 3,250 or more must be read as requiring only such services of a judge as may, consistent with the judicial needs of the district, be required to transact whatever judicial business is brought in the city (MCL 600.8251[3]; MSA 27A.8251[3]).

4. COURTS — DISTRICT COURTS — CIVIL PROCEDURE — VENUE — JUDICIAL DISTRICTS.

The district court act does not require that general civil cases in districts of the second or third class, other than in the small claims division, be tried at a specific location within the judicial district; the Legislature has determined that a judicial district is a proper forum for cases arising in that district (MCL 600.8251, 600.8312, 600.8416; MSA 27A.8251, 27A.8312, 27A.8416).

5. COURTS — DISTRICT COURTS — VENUE — 37TH JUDICIAL DISTRICT.

The 37th Judicial District must sit in Center Line to hear actions for Center Line ordinance violations (MCL 600.8251[3], 600.8312; MSA 27A.8251[3], 27A.8312).

6. COURTS — DISTRICT COURTS — CRIMINAL LAW — VENUE — JUDICIAL DISTRICTS.

State criminal actions cognizable by a district court, and preliminary examinations for offenses not cognizable by a district court may be heard in a political subdivision other than that in which the offense was committed within a judicial district of the third class where the offense was committed within a mile of the boundary of the subdivision in which the case was heard (MCL 600.8312, 762.3; MSA 27A.8312, 28.846).

CONCURRENCE IN PART BY WILLIAMS AND LEVIN, JJ.

See headnotes 2-3.

7. COURTS — DISTRICT COURTS — VENUE — STATUTES — CONSTRUCTION.

*The statutory venue provisions for district courts concern a "proper" district in which to commence and try an action; they do not empower the judges of the district to select the place in*

*the district where the case shall be heard and refuse to hear it at a statutorily designated place (MCL 600.8312; MSA 27A.8312).*

8. COURTS — DISTRICT COURTS — PLACE OF SITTING — CODE OF CRIMINAL PROCEDURE.

*The provisions in the Code of Criminal Procedure that where an offense is committed on, or within one mile of, the boundary of a political subdivision venue is proper in any political subdivision concerned is designed to facilitate prosecution of offenders who otherwise might claim that venue is improperly laid; its construction to allow judges of a district to concentrate all criminal prosecutions at one place of sitting outside of a political subdivision which is also a designated place of sitting where the political subdivision is so shaped that no part of it is more than one mile from its boundary, but not to confer such power on the judges where a political subdivision is not so shaped is to ascribe an anomalous intent to the Legislature (MCL 762.3; MSA 28.846).*

9. COURTS — DISTRICT COURTS — STATUTES.

*The Legislature intended a district court to sit at each city within the district having a population of 3,250 or more to transact all judicial business properly brought before it under the jurisdictional and venue provisions of the state (MCL 600.8251[3]; MSA 27A.8251[3]).*

*Roy W. Rogensues* and *James M. Hacker* for plaintiff.

*Sherman P. Faunce, Don Binkowski, Thomas E. Kennedy,* and *George E. Montgomery,* District Judges, in *propriis personis.*

FITZGERALD, J. The City of Center Line asks us, for constitutional reasons and reasons of statutory construction, to hold that one of the four judges of the 37th judicial district must sit full time at the facilities provided by the city.

I

The 1963 Constitution required the Legislature to establish a court of limited jurisdiction:

"The location of such court or courts, and the qualifi-

cations, tenure, method of election and salary of the
judges of such court or courts, and by what governmen-
tal units the judges shall be paid, shall be provided by
law, subject to the limitations contained in this article."
Const 1963, art 6, § 26.

The Legislature responded with the district
court act.[1] Among the judicial districts created was
the 37th, consisting of the cities of Warren and
Center Line.[2] The 37th was made a district of the
third class, *i.e.,* "a district consisting of 1 or more
political subdivisions" with each political subdivi-
sion responsible for court operations.[3] Under RJA
§ 9921,[4] existing municipal courts were "abolished"
except those that were resurrected under § 9928:[5]

"(1) The district court shall not function nor shall
district judges be elected in any district of the third
class in which 1 or more cities which maintain munici-
pal or police courts and which contain, individually or
in the aggregate, more than 50% of the population of
the district elect to retain their municipal or police
courts by resolution adopted by their respective govern-
ing bodies within 7 days after the effective date of this
section."

Center Line adopted the requisite resolution to
opt out of the district court system, but Warren
did not. Since Center Line did not itself contain
"more than 50% of the population" of the 37th
judicial district, its action was ineffective. Conse-
quently, the 37th judicial district began operations
on January 1, 1969.

Until 1975, three of the four judges of the 37th
judicial district had courtrooms in Warren; the

[1] 1968 PA 154; MCLA 600.8101 *et seq.;* MSA 27A.8101 *et seq.*

[2] MCLA 600.8122(1); MSA 27A.8122(1).

[3] MCLA 600.8103(3); MSA 27A.8103(3).

[4] MCLA 600.9921; MSA 27A.9921.

[5] MCLA 600.9928; MSA 27A.9928.

fourth occupied facilities provided by Center Line. In 1975, Warren constructed a new judicial building with four courtrooms. Center Line apparently concluded that the district judges intended to remove court operations entirely to the Warren facility. The city filed a complaint in Macomb Circuit Court which sought declaratory and injunctive relief. It alleged that statutes required all criminal and civil cases to be heard in the political subdivision in which they arose and the small claims division to sit in the city.

The circuit court entered a judgment which required only small claims arising in Center Line and Center Line ordinance violations to be heard in the city; the remaining business of the court could be transacted "at any place within the geographical area of the 37th judicial district". On March 3, 1977, the Court of Appeals said that "arraignments on warrants from Center Line and preliminary examinations on all offenses committed in Center Line" must be heard in the city;[6] in all other respects the panel affirmed the circuit court judgment.

## II

The city argues that RJA § 9928 denies equal protection and due process and is therefore unconstitutional. The equal protection argument flows from the fact that other similarly situated cities were placed in a position to retain their municipal courts,[7] while Center Line was effectively precluded from doing so by being arbitrarily placed with a city which could make Center Line's option

---

[6] 74 Mich App 97, 104; 253 NW2d 669 (1977).

[7] See, e.g., MCLA 600.8121(17); MSA 27A.8121(17) and MCLA 600.8122(2); MSA 27A.8122(2), the former grouping five cities and one township, and the latter creating a one-city judicial district.

under § 9928 illusory. The due process violation is said to derive from the Legislature's delegation to Warren of the determination whether 1968 PA 154 would be effective in Center Line.

The Court of Appeals said:

"A finding by this Court that MCLA 600.9928; MSA 27A.9928 is unconstitutional would in no way afford plaintiff the relief sought. The Center Line municipal court was abolished by MCLA 600.9921; MSA 27A.9921. Voiding MCLA 600.9928; MSA 27A.9928 would not reestablish the municipal court or provide any aid in doing so. We, therefore, decline to consider the question." 74 Mich App 97, 103; 253 NW2d 669 (1977).

We agree. If § 9928 were to be held unconstitutional, it would clearly be severable[8] from the remainder of 1968 PA 154; success on this argument would avail the city nothing.

### III

RJA § 8251(3) lies at the center of this controversy:

"In districts of the third class the court shall sit at each city having a population of 3,250 or more and within each township having a population of 12,000 or more and at such other places as the judges of the district determine. However the court shall not be required to sit in any political subdivision if the governing body of that subdivision by resolution and the court agree that the court shall not sit therein."[9]

There appear to be no cases defining the word "sit" in the context in which it is used in

---

[8] See, e.g., *People v McQuillan,* 392 Mich 511, 542-543; 221 NW2d 569 (1974).

[9] MCLA 600.8251(3); MSA 27A.8251(3).

§ 8251(3).[10] Center Line would construe "sit" to require the location of one of the four judges of the 37th judicial district in the city, the situation it had enjoyed *de facto* from 1969 to 1975. Given the relative source of cases in the 37th judicial district, that construction would require Warren parties, witnesses and attorneys to travel to Center Line for disposition of Warren cases in order to allow the judge in Center Line to shoulder his share of the district's business. If we were to adopt the city's position, using the 1970 census, we would be creating many "full-time" judge locations in the state where none now are thought to exist. We will not interpret the legislative language to achieve a result that body could not have intended. The statute does not require a full-time judge in Center Line, only such services of a judge as may, consistent with the judicial needs of the district, be required to transact whatever judicial business is brought in the city.

## IV

The statute requires only that some judicial business be conducted in Center Line. The question remains as to what then *must* be heard in Center Line. The parties agree that by statute the small claims division of the 37th judicial district must sit in Center Line "once each 30 days".[11] Other civil cases were governed by RJA § 8312(5):

[10] Authorities we have found seem to agree that "sit" means "to hold court" or "do any act of a judicial nature". See, *e.g., Russell v Crook County Court,* 75 Or 168; 145 P 653, 146 P 806 (1915); *Allen v State,* 102 Ga 619; 29 SE 470 (1897).

[11] MCLA 600.8416; MSA 27A.8416: "The small claims division of the district court shall sit at least once each 30 days at such locations as the district court is required to sit as set forth in section 8251." The circuit court observed that this section by inference also made it unlikely the Legislature intended a full-time judge in each city of 3,250 or more.

"In districts of the second or third class venue in civil actions shall be in the district in which the subject of the action is situated, the cause of action arose or in the district in which the defendant is established or resides. If there is more than 1 defendant, actions shall be filed in the district in which any defendant is established or resides."[12]

By arguing that civil actions arising out of transactions within Center Line "ought to be heard" rather than "must be heard" in Center Line, the city recognizes that this section does not require that general civil cases be tried at a specific location within the 37th judicial district. The city argues only that it is a convenient forum for certain litigation.

As a result of 1974 PA 319, RJA § 8312(5) now reads:

"Venue in civil actions shall be governed by the provisions of sections 1601 to 1659 except that for purposes of this subsection all references to 'county' in sections 1601 to 1659 shall mean 'district' with respect to districts of the second and third class."

In adopting by reference RJA §§ 1601 to 1659, the Legislature has determined that a judicial district is a proper forum for cases arising in that district; we accept the Legislature's determination.

Center Line argues that all criminal violations alleged to have occurred in Center Line "ought to be heard" there. The relevant venue provisions are RJA §§ 8312(3) and 8312(4)(a):

"(3) In a district of the third class, venue in criminal actions for violations of state law and all city, village, or township ordinances shall be in the political subdivi-

---

[12] 1968 PA 154, § 8312(5).

sion thereof where the violation took place, except that when such violation is alleged to have taken place within a political subdivision where the court is not required to sit the action may be tried in any political subdivision within the district where the court is required to sit.

"(4) With regard to state criminal violations cognizable by the district court, the following special provisions shall apply:

"(a) If an offense is committed on the boundary of 2 or more counties, districts, or political subdivisions or within 1 mile thereof, venue is proper in any of the counties, districts, or political subdivisions concerned."[13]

Under §§ 8312(3) and 8251(3), it is clear that Center Line ordinance violations must be heard in Center Line. The parties agree that no part of Center Line is more than one mile from Warren; consequently under the exception clause, § 8312(4)(a), the circuit court concluded that state criminal violations could be heard in Warren. The Court of Appeals noted that the exception was limited to state criminal violations "cognizable by the district court". Since the only state criminal violations cognizable by the district court are "[m]isdemeanors punishable by fine or imprisonment not exceeding 1 year",[14] the panel said that other state criminal violations involving the district court (arraignments and preliminary examination in felony cases) must be heard in Center Line if the violation took place there, under § 8312(3).

In the subsequently enacted 1970 PA 213, however, the Legislature provided a new subsection of MCLA 762.3; MSA 28.846 governing venue in state offenses cognizable by an examining magistrate.

---

[13] MCLA 600.8312(3), 600.8312(4)(a); MSA 27A.8312(3), 27A.8312(4)(a).

[14] MCLA 600.8311(a); MSA 27A.8311(a).

"(3) With regard to state offenses cognizable by the examining magistrate and to examinations conducted for offenses not cognizable by the examining magistrate, the following special provisions apply:

"(a) If an offense is committed on the boundary of 2 or more counties, districts or political subdivisions or within 1 mile thereof, venue is proper in any of the counties, districts or political subdivisions concerned."

Insofar as this later statute conflicts with RJA § 8312(3), it must control as the more recent expression of legislative intention. *Antrim County Social Welfare Board v Lapeer County Social Welfare Board,* 332 Mich 224; 50 NW2d 769 (1952).

We believe that the circuit court correctly determined what must be heard in Center Line. We would not preclude a request to invoke our administrative or rule-making authority if the city can demonstrate that judicial resources can be more effectively used in the 37th judicial district, and the judges do not agree.

The judgment of the circuit court is affirmed.

COLEMAN, RYAN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.

WILLIAMS and LEVIN, JJ. *(concurring in part, dissenting in part).* We agree with part III of Justice FITZGERALD's opinion. We would hold, however, that the Legislature, in requiring that the court shall sit at each city within the district having a population of 3,250 or more intended that it shall sit to transact all judicial business, civil and criminal, which, under the statutes, *may* be brought before it, and that the venue provisions do not impliedly confer on the judges any power to limit the scope of the sitting.

# I

The majority reasons that to the extent, under the venue statutes, the entire "judicial district is a *proper* forum for cases arising in that district [emphasis supplied]", the judges are empowered to direct that all cases be heard in one place in the district.

The venue provisions do not confer judicial power. They concern, rather, a "proper" county or district "in which to commence and try" an action.[1] While it would, unless otherwise provided, be proper under the venue provisions to commence and try an action at any of the places the court sits, it does not follow that it is not proper to commence and try a case at another of the places the court sits. Nor is it implied that the judges of the court are thereby empowered to select the place in the district where the case shall be heard and to refuse to hear it at a statutorily-designated place.

The act provides that "[t]he thirty-seventh district consists of the cities of Warren and Center Line, is a district of the third class and has 4 judges".[2] It further provides that:

"In districts of the third class the court *shall sit* at each city having a population of 3,250 or more and within each township having a population of 12,000 or more and at such other places as the judges of the district determine. However the court shall not be required to sit in any political subdivision if the govern-

---

[1] MCL 600.8312(5); MSA 27A.8312(5) provides:

"Venue in civil actions shall be governed by the provisions of sections 1601 to 1659 except that for purposes of this subsection all references to 'county' in sections 1601 to 1659 shall mean 'district' with respect to districts of the second and third class."

Sections 1605 *et seq.* speak of "a proper county in which to commence and try" the actions described in those sections.

[2] MCL 600.8122(1); MSA 27A.8122(1).

ing body of that subdivision by resolution and the court
agree that the court shall not sit therein."[3] (Emphasis
supplied.)

It is thus clear that while the judges have the
power to determine "other places" where the court
shall sit and agree to a resolution of a political
subdivision "that the court shall not sit therein",
they do not have the power to refuse to sit in a
statutorily-designated place of sitting.[4]

The venue provisions seek to protect a defendant
from being required to answer a complaint in an
inappropriate county or district. The designation
of multiple places of sitting in the district is for
the primary convenience of litigants and lawyers
at the locales designated and seeks to secure to the
people a court at such locales. If the Legislature
intended that the judges determine where within
the district the court "shall sit" it would not have
designated places of sitting statutorily. If the
venue provisions were to govern, instead of the
elaborate provisions regarding places of sitting all
that should have been said was that "the court
shall sit at the places within the district the judges
shall determine, except as otherwise required by
law". The construction of the majority deprives
the words "shall sit" of most of their meaning.

## II

The majority avoids resolving where small
claims "must" be heard, stating: "The *parties
agree* that by statute the small claims division of
the 37th judicial district must sit in Center Line

---

[3] MCL 600.8251(3); MSA 27A.8251(3).

[4] It is similarly provided as to districts of the first and second class
that the court shall also sit at such other places as the judges of the
district shall determine. MCL 600.8251, subds (1) and (2); MSA
27A.8251, subds (1) and (2).

'once each 30 days.' " (Emphasis supplied.) That disposition makes it unnecessary for the majority to decide whether the small claims venue provisions empower the judges of the 37th district court to require that all small claims arising in the district be heard in Warren.

The act provides, paralleling the venue provisions applicable in civil actions generally (fn 1), that "[i]n districts of the second or third class actions in the small claims division shall be commenced in the district in which the cause of action arose or in the district in which the defendant is established or resides".[5]

It would therefore appear, by the process of reasoning applied to civil actions generally (Part I, *supra)* and state law violations (Part III, *infra),* that the judges of this district court are empowered to require that all judicial business, including small claims, be conducted in Warren, except violations of City of Center Line Ordinances. If "shall sit" does not take precedence over venue provisions, neither does "shall sit at least once each 30 days".

### III

The majority states that because "venue in criminal actions for violations of * * * all city, village, or township ordinances shall be in the political subdivision thereof where the violation took place",[6] charges of ordinance violations must be

---

[5] MCL 600.8415; MSA 27A.8415.

[6] MCL 600.8312; MSA 27A.8312 provides:

"(3) In a district of the third class, venue in criminal actions for violations of state law and all city, village, or township ordinances shall be in the political subdivision thereof where the violation took place, except that when such violation is alleged to have taken place within a political subdivision where the court is not required to sit the action may be tried in any political subdivision within the district where the court is required to sit.

heard in Center Line.

It is stated, however, that charges of state law violations which occurred in Center Line need not be heard in Center Line because no part of Center Line is more than one mile from Warren[7] and a 1970 amendment to the Code of Criminal Procedure provides that where "an offense is committed on the boundary of" any political subdivision or "within 1 mile thereof, venue is proper in any" "political subdivision concerned".[8] The amended provision concerns offenses committed so close to the boundary of a political subdivision that it is difficult or impossible to determine the subdivision in which they occurred; it is designed to facilitate the prosecution of offenders who otherwise might claim that the venue is improperly laid.

The majority's construction means that the Legislature conferred power on judges of a district having the geographic configuration of the 37th district to concentrate all state law violations in one place of sitting, but did not confer such power where a statutorily-designated subdivision is not in its entirety within one mile of its boundary. We

"(4) With regard to state criminal violations cognizable by the district court, the following special provisions shall apply:

"(a) If an offense is committed on the boundary of 2 or more counties, districts, or political subdivisions or within 1 mile thereof, venue is proper in any of the counties, districts, or political subdivisions concerned.

"(b) If an offense is committed in or upon any railroad train, automobile, aircraft, vessel, or other conveyance in transit, and it cannot readily be determined in which county, district, or political subdivision the offense was committed, venue is proper in any county, district, or political subdivision through or over which the conveyance passed in the course of its journey."

[7] The Court of Appeals held that because MCL 600.8312(4); MSA 27A.8312(4), concerning cases where it is difficult or impossible to determine where the offense occurred, concerns only "state criminal violations cognizable by the district court", arraignments and preliminary examinations for offenses committed in Center Line must be held there.

[8] 1970 PA 213; MCL 762.3; MSA 28.846.

would not ascribe such an anomalous intent to the Legislature. If it wished to confer such power on these or all district judges, it would have done so in a more congruous manner.

## IV

The district court act was enacted pursuant to Const 1963, art 6, § 26, which abolished the offices of circuit court commissioner and justice of the peace not later than five years from the date the Constitution became effective. "Within this five-year period, the legislature shall establish a court or courts of limited jurisdiction with powers and jurisdiction defined by law." It was contemplated, as appears from the Address to the People, that the Legislature would "re-evaluate the entire system of courts of limited jurisdiction and * * * develop a lower court structure better adapted to the needs of the people and the ends of justice". 2 Official Record, Constitutional Convention 1961, p 3389. Statutory courts, including municipal courts, were not abolished and these courts continued unchanged "except as provided by law, until they are abolished by law".[9]

The district court act bears the hallmarks of legislative compromise. Cities of 3,250 or more, many of which stood to lose, as Center Line did, their municipal courts, were designated as places in which the district court shall sit. In that context it is apparent that the commitment was not that the court would sit in some truncated manner at the pleasure of the judges, but, rather, that it would sit to conduct the usual business of the court. Surely, the Legislature did not intend that

---

[9] Const 1963, art 6, § 26.

the facilities of a former municipal court would be maintained to hear only ordinance violations.

It may well be that it would better serve the convenience of some litigants and lawyers, the judges and court personnel, and be more efficient and less expensive to concentrate all the business of this district court in one place. To do so without legislative authorization is, however, contrary to the spirit of the act designating Center Line as a place where the court "shall sit".

We would enter an order declaring that the 37th district shall sit in Center Line to hear all judicial business properly brought there under the jurisdictional and venue provisions of the state, and that the judges of the court are not empowered to limit the judicial business that may be brought in Center Line.

KAVANAGH, C.J. concurred with WILLIAMS and LEVIN, JJ.