WARREN v McLOUTH STEEL CORPORATION

Docket Nos. 45980, 46069, 47151. Submitted December 9, 1980, at
Detroit.—Decided November 30, 1981. Leave to appeal applied
for.

Bertrum F. Warren was injured when he fell from a steel beam
in a plant owned by McLouth Steel Corporation. At the time of
the accident Warren was employed by Valley Consolidated
Industries, Inc., which had contracted to do certain repair and
installation work for McLouth Steel at its plant. Warren insti-
tuted a negligence action against McLouth Steel in Wayne
Circuit Court. McLouth Steel, in turn, filed a third-party action
for indemnity against Valley Consolidated Industries, pleading
both contractual and common-law indemnity. Following a trial
before Myron H. Wahls, J., the jury returned a verdict in favor
of Warren and against McLouth Steel. The jury also found in
favor of McLouth Steel against Valley Consolidated Industries
on the third-party indemnity claims. Judge Wahls thereafter
granted McLouth Steel's motion to tax actual costs and actual
expenses, including attorney fees, against Valley Consolidated
Industries. McLouth Steel appeals from the judgment in favor
of plaintiff. Valley Industries filed separate appeals from the
indemnity judgment and from the order taxing costs. The
appeals were consolidated for consideration. *Held:*

1. No error arose from plaintiff's questions of a McLouth
employee relative to subsequent accidents which occurred at
McLouth Steel involving outside contractors and relative to the
worth and size of McLouth Steel, since McLouth opened the

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 313.
[1, 2] 81 Am Jur 2d, Witnesses § 478 *et seq.*
[3] 5 Am Jur 2d, Appeal and Error §§ 624-627.
[4] 5 Am Jur 2d, Appeal and Error § 849.
 75 Am Jur 2d, Trial § 500.
[5] 41 Am Jur 2d, Independent Contractors § 5 *et seq.*
 75 Am Jur 2d, Trial § 496 *et seq.*
[6] 41 Am Jur 2d, Independent Contractors §§ 41-43, 53.
 57 Am Jur 2d, Negligence §§ 6, 7, 9.
[7] 57 Am Jur 2d, Negligence §§ 4, 294, 442 *et seq.*
[8] 41 Am Jur 2d, Indemnity § 36.

door to those areas by eliciting from the witness that McLouth was one of the most safety conscious companies there is, that he knew of no other serious injuries occurring to outside contractors doing repair work and that McLouth was the 12th or 15th largest steel company. The testimony elicited by plaintiff was clearly for the purpose of impeaching the credibility of the witness rather than proving McLouth's negligence.

2. Since there was evidence that a McLouth employee inspected Valley's work on a daily basis, that McLouth wrote the contract and specifications and supplied the materials used on the job and that McLouth retained the right to discharge Valley's employees under certain circumstances, there was sufficient evidence of retained control to permit the question of retained control to go to the jury. The trial court, accordingly, properly denied McLouth's motion for a directed verdict on the retained control theory.

3. The claim that the job involved an inherently dangerous activity was properly submitted to the jury, there being evidence as to the hazardous elements of the job and the job site. The inherently dangerous activity doctrine is not, as a matter of law, inapplicable to an independent contractor or an employee of an independent contractor.

4. The trial court properly submitted the questions of both contractual and common-law indemnity to the jury, there being sufficient evidence produced at trial to support either theory.

5. While McLouth is not entitled to its actual and reasonable costs and attorney fees associated with the prosecution of its third-party indemnity action against Valley, it is entitled to the actual costs and attorney fees associated with its defense of the principal action. Since there was no apportionment of those costs and expenses between the two jointly tried actions, a remand for such apportionment is necessary.

Affirmed in part, reversed in part and remanded.

1. NEGLIGENCE — EVIDENCE — SUBSEQUENT ACCIDENTS.

A plaintiff in a negligence action may properly inquire of a witness about other subsequent accidents which occurred at the plants of the defendant where the witness is an employee of the defendant and testified under examination by the defendant that the defendant was a safety conscious company and that the witness knew of no other serious injuries occurring under similar circumstances.

2. EVIDENCE — CORPORATIONS.

Testimony as to the worth of a corporate defendant and the

number of employees employed by the defendant is admissible where the defendant opens the door to the issue of the size and worth of the company by eliciting references as to the relative size of the company in the industry in which the company operates.

3. EVIDENCE — APPEAL — PRESERVING QUESTION.

The failure to object to matters raised in closing arguments precludes appellate review of the propriety of such arguments.

4. MOTIONS AND ORDERS — DIRECTED VERDICTS — APPEAL.

Review of a motion for directed verdict is made by viewing the proofs and reasonable inferences therefrom in the light most favorable to the nonmovant; such motion should be denied if the facts, when so viewed, indicate that reasonable minds could differ.

5. NEGLIGENCE — DIRECTED VERDICTS — INDEPENDENT CONTRACTORS — RETAINED CONTROL — EVIDENCE.

A motion for a directed verdict made by a defendant on the plaintiff's claim that the defendant retained control over the independent contractor who employed the plaintiff is properly denied where there is evidence that the work of the independent contractor was inspected daily by an employee of the defendant, the contract and specifications for the job were written by the defendant, the materials were supplied by the defendant, and the defendant retained the right to discharge the employees of the contractor under certain circumstances.

6. NEGLIGENCE — INHERENTLY DANGEROUS ACTIVITIES — QUESTION OF FACT — INDEPENDENT CONTRACTORS.

The question of whether an activity is inherently dangerous is a question of fact to be determined by the jury and should be submitted to the jury where there is evidence as to the hazardous nature of the job and job site; the inherently dangerous activity doctrine is not, as a matter of law, inapplicable to a situation involving an independent contractor or an employee of an independent contractor.

7. INDEMNITY — ACTIVE NEGLIGENCE — EQUITY.

A party seeking common-law indemnity for its liability must show that he is free from active or causal negligence and that the injury giving rise to the claim of indemnity arose out of the active negligence of the party against whom indemnity is being sought; indemnity is based on the theory that liability should attach to the party best situated to adopt preventive measures.

8. INDEMNITY — COSTS — ATTORNEY FEES.

   Costs and attorney fees incurred by an indemnitee in defense of
   the principal action may be recovered by the indemnitee from
   the indemnitor, however, the costs and attorney fees incurred
   in the prosecution of the indemnity action by the indemnitee
   against the indemnitor may not be recovered; the costs and
   attorney fees associated with the defense of the principal action
   by the indemnitee may be recovered even where both the
   principal action and the indemnity action are tried together.

*Dice, Sweeney, Sullivan & Feikens, P.C.,* for plaintiff.

*Charfoos & Charfoos, P.C.* (by *David S. Robinson, Jr.*) (*Hayim I. Gross* and *Richard J. Dimanin,* of counsel), for McLouth Steel Corporation.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark,* for Valley Consolidated Industries, Inc.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and J. H. GILLIS, JJ.

V. J. BRENNAN, P.J. This case involves an appeal by defendant, McLouth Steel Corporation (hereinafter McLouth), from a jury verdict finding it liable for injuries sustained by plaintiff, Bertrum F. Warren. It further involves an appeal by third-party defendant, Valley Consolidated Industries, Inc. (hereinafter Valley), from a jury verdict finding it liable for indemnification to third-party plaintiff, McLouth.

McLouth initially contracted with Valley for repair of an oxygen process vessel and installation of a charging deck and heat shields. During the course of performance of this work, Bertrum F. Warren, an employee of Valley, was seriously injured when he fell from a steel beam in a plant owned by McLouth. Warren instituted suit against

McLouth alleging negligence on the part of McLouth.

McLouth, in turn, added Valley as a third-party defendant seeking, *inter alia,* common-law and contractual indemnification.

On May 3, 1979, a Wayne County Circuit Court jury returned a verdict in favor of Warren and against McLouth in the amount of $750,000 less 10 percent for Warren's comparative negligence. The jury also found in favor of McLouth against Valley on both contractual and common-law indemnification. Thereafter, the trial court granted McLouth's motion against Valley for costs and expenses incurred in the action.

We address first the issues raised on appeal by McLouth.

At trial, plaintiff's counsel called McLouth's employee Victor Gagne to testify pursuant to the opposite party statute, MCL 600.2161; MSA 27A.2161. Gagne, an employee of McLouth for 22 years, was a field engineer at the time of the accident. After plaintiff's examination, counsel for McLouth questioned Gagne, eliciting from him, *inter alia,* that McLouth was a safety conscious company and that he knew of no other serious injuries occurring to outside contractors engaged in such repair work. He also testified that McLouth was the 12th or 15th largest steel company. Plaintiff's counsel then recross-examined Gagne as to a number of subsequent accidents which had occurred at McLouth's plants which involved outside contractors. He also questioned Gagne as to the size and pecuniary worth of McLouth.

On appeal, McLouth raises a number of issues relating to this testimony given by Gagne during the latter cross-examination by plaintiff's counsel. We find no merit to them, either individually or

collectively. McLouth first contends that the testimony as to subsequent accidents was so prejudicial as to deprive it of a fair trial. Had such evidence been introduced to prove McLouth's negligence, we would find it error. However, this evidence was admitted to prove an issue collateral to defendant's negligence. Upon reading the record, it seems obvious that the testimony was only allowed to impeach the credibility of Gagne as to his statements that "McLouth is one of the most safety conscious companies there is" and to impeach his testimony that during his 22 years at the plant he would have been informed of any injury to an employee of an outside contractor. Having first raised these issues on its examination of Gagne, McLouth should not be allowed to complain when plaintiff's counsel attempted to impeach this testimony on cross-examination. See *Grist v Upjohn Co,* 16 Mich App 452, 482-483; 168 NW2d 389 (1969), *lv den* 382 Mich 768 (1969).

Similarly, on the same rationale we reject McLouth's argument that testimony elicited by plaintiff on recross-examination as to the size of the defendant corporation and the number of employees it employs deprived defendant of a fair trial. We again note that it was McLouth who initially "opened the door" on this issue and cannot now complain when plaintiff tested defendant's witness's credibility on cross-examination.

Finally, we note that McLouth did not object at trial to plaintiff's closing argument when he alluded to the safety and size of the corporation. Therefore, McLouth is precluded from raising the propriety of this argument for appellate review. *Tiffany v Christman Co,* 93 Mich App 267, 282; 287 NW2d 199 (1979), *George v Travelers Indemnity Co,* 81 Mich App 106, 116; 265 NW2d 59 (1978).

McLouth next argues that the trial court erred as a matter of law in not granting its motion for a directed verdict on the issues of retained control and inherently dangerous activity.

In considering a motion for a directed verdict, a trial court is required to view the evidence in a light most favorable to the nonmovant, *Tiffany v Christman Co, supra,* 284, *Armstrong v LeBlanc,* 395 Mich 526, 532; 236 NW2d 419 (1975), and the trial court should deny such a motion if the facts, when so viewed, indicate that reasonable minds could differ, *Johnson v Grant Trunk W R Co,* 58 Mich App 708, 713; 228 NW2d 795 (1975). Furthermore, "[i]n reviewing denial of a directed verdict for defendant on completion of plaintiff's proofs, this Court considers proofs and reasonable inferences therefrom in the light most favorable to the plaintiff". *Signs v Detroit Edison Co,* 93 Mich App 626, 631; 287 NW2d 292 (1979), *Humenik v Sternberg,* 371 Mich 667, 669; 124 NW2d 778 (1963).

We first consider the propriety of denial of a directed motion as to retained control. The leading case in Michigan on retained control is *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974). The Supreme Court recognized that, while ordinarily an owner is not responsible for injuries caused by a carefully selected contractor to whom he has delegated work, this rule does not apply if he has not truly delegated but has retained control of the work. The *Funk* Court relied on the following factors in concluding that a jury could properly hold the owner liable on a retained control theory.

"General Motors exercised an unusually high degree of control over the construction project from its very inception. Its internal divisions drew up the building plans, wrote the contractual specifications, and acted as

architectural supervisor. It directly hired several of the contractors, including Ben Agree, wrote the contracts agreed to by those contractors, and only later assigned the contracts to Darin & Armstrong.

"Arthur Collins, General Motors' representative, testified that he could order Darin & Armstrong to terminate any prime or subcontractor within 24 hours. General Motors also retained the right to continue hiring additional subcontractors and then, if desired, assign their contracts to Darin & Armstrong for coordination with the other contractors.

"Collins—daily at the job site—interpreted the contract specifications and plans for Darin & Armstrong. Aided by other General Motors on-the-spot inspectors, he ensured that the 'general conditions' and other provisions of the contract were being fulfilled. These included safety requirements, quality and performance of the work, fire protection, price restraints and completion deadlines." *Funk, supra,* 105-106. (Footnote deleted.)

In the instant case evidence introduced at trial for plaintiff indicated, among other things, that McLouth's employee, Victor Gagne, inspected the work on a daily basis; that McLouth wrote the contract used by Valley, supplied Valley with materials and wrote the specifications for the work to be done; and that McLouth also sent out instructions to bidders, received bids and selected the contractor. It also retained the right to discharge employees of a contractor who loitered in other parts of the plant.

We find this evidence sufficient to withstand defendant's motion for directed verdict. *Tiffany, supra.* Hence, we conclude that the trial court did not err in submitting the issue to the jury.

Similarly, we find that the trial court did not err by denying McLouth's motion for a directed verdict on the issue of inherently dangerous activity. Whether the activity being analyzed is inherently

dangerous is a question of fact to be determined by the jury. *Dowell v General Telephone Co of Michigan,* 85 Mich App 84, 91; 270 NW2d 711 (1978), *lv den* 405 Mich 803 (1979). It is clear from a reading of the transcript that the plaintiff produced evidence as to the hazardous elements of the job and job site. Therefore, we concur with the trial court's decision to submit the issue to the jury. Further, we reject McLouth's contention that the doctrine of inherently dangerous activity, as a matter of law, is inapplicable to an independent contractor or an employee of an independent contractor. See *Dowell v General Telephone Co, supra, Funk v General Motors Corp, supra,* 136, dissent of Chief Justice COLEMAN.

In summary, we conclude that none of McLouth's alleged errors, either individually or collectively, warrant reversal. We thereby affirm the verdict and judgment rendered in favor of Warren against McLouth.

Valley appeals from the verdict and judgment finding it liable to the third-party plaintiff, McLouth, for indemnification. In the instant case, the jury returned a special verdict whereby it found for McLouth against Valley on both common-law indemnification and contractual indemnification. We initially address the common-law indemnification issue.

The courts have recognized that the right to indemnification can be based on the theory that "the party entitled to indemnification was a 'passive' tortfeasor as opposed to the 'active' tort of some other party". *Dale v Whiteman,* 388 Mich 698, 705; 202 NW2d 797 (1972). See also *Provencal v Parker,* 66 Mich App 431, 435-436; 239 NW2d 623 (1976), and *Minster Machine Co v Diamond Stamping Co,* 72 Mich App 58, 61-63; 248 NW2d

676 (1976). While both parties are liable to the injured person, the act or omission of the one from whom indemnity is sought must be the primary cause of the injury. *Provencal v Parker, supra.* A related concept is that liability should ultimately rest on the party best situated to adopt preventive measures. *Dale v Whiteman, supra,* 706, *Minster Machine v Diamond Stamping, supra,* 62-63.

In the instant case, the issue of the right to common-law indemnification was submitted to the jury under the instruction that "[i]n order for McLouth Steel to have a claim for indemnification against Valley at common law, McLouth Steel must prove its own freedom from any fault or negligence that was the proximate cause of any injuries to Bertrum F. Warren". Additionally, the trial court ruled as a matter of law that McLouth was not responsible for the projection which plaintiff was grasping when he fell. Further, the trial court had previously granted a directed verdict in favor of McLouth stating that McLouth had no obligation to plaintiff to provide a safe place in which to work. Finally, the evidence abounds with testimony on which the jury could conclude that Valley was the party best situated to adopt preventive measures designed to reduce or eliminate the risk of injury to its employee. Therefore, on the record before us, we have no difficulty in interpreting the jury verdict granting McLouth common-law indemnification to be grounded on the inherent finding that McLouth was free from active or causal negligence. Hence, we reject Valley's contention that the jury verdict finding that McLouth's negligence was the proximate cause of plaintiff's injury as being fatal to a claim for common-law indemnification. The finding in favor of Warren against McLouth can be viewed only as

establishing Warren's right to recovery from McLouth and not a determination of which tortfeasor was actively or passively negligent. It did not preclude the jury from finding that McLouth, while liable to Warren, was also a passive tortfeasor and hence entitled to common-law indemnification from Valley, the active tortfeasor.

We also find no error in the trial court's denial of Valley's motion for a directed verdict and judgment notwithstanding the verdict as to its contractual indemnification liability. As with other aspects of this case, the evidence as to the existence of a contract for indemnification was ambiguous and conflicting. However, suffice it to state that the evidence and reasonable inferences to be drawn on the issue of a contractual agreement[1] to indemnify was sufficient to withstand either a motion for directed verdict or judgment notwithstanding the verdict. *Tiffany, supra, Signs v Detroit Edison Co, supra.* We find no error in the trial court's denial of either motion. Related to this determination, we likewise find that the trial

---

[1] McLouth's purchase order contained the following indemnification clause:

"10. If this Order covers the performance of labor for the Buyer, *Seller will defend and indemnify Buyer and its employees and against all claims, losses, liabilities and expenses of every kind or nature on account of injury to or death of any person, or damage to property of Buyer or others, arising out of, in the course of, or in conenction with Seller's performance hereof.* The indemnity provided herein shall be applicable regardless of any liability for payment of Workmen's Compensation benefits and regardless of any claim that the injury, death, or damage arose as a result of the sole negligence of Buyer or the concurrent negligence of Buyer and Seller or others—whether active or passive—or arose in connection with the equipment furnished by Buyer or with the condition of its premises. Seller further agrees to furnish a Certificate from its insurance carriers showing that it carries adequate Workmen's Compensation, Public Liability, and Property Damage insurance coverage. Said Certificate must show the amount of coverage, number of policy, and date of expiration. If Seller is self-insurer it must have the Department of Labor and Industry of the state in which its labor is to be performed furnish a Certificate of same direct to Buyer." (Emphasis added.)

court committed no reversible error by giving conflicting instructions on the existence of a contractual agreement. The trial court sufficiently overcame any presumption of error flowing from conflicting instructions when it recalled the jury and specifically advised them that the factual issue to be decided was whether an agreement for indemnification existed between McLouth and Valley.[2]

Lastly, Valley argues that the trial court erred in granting McLouth's motion for actual costs and actual attorney fees incurred in defending this action.

Michigan adheres to the general rule that awards of costs or attorney fees are not allowed unless expressly authorized by an applicable statute, the court rules, or a recognized exception. *Hester v Comm'rs of Parks and Boulevards of Detroit,* 84 Mich 450; 47 NW 1097 (1891), *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71, 74; 212 NW2d 821 (1973), *Birou v Thompson-Brown Co,* 67 Mich App 502, 515; 241 NW2d 265 (1976), *Center Line v 37th Dist Court Judge,* 74 Mich App 97, 103; 253 NW2d 669 (1977), *modified* 403 Mich 595; 271 NW2d 526 (1978), *Salvador*

---

[2] *"The Court:* Now, the *defendant, McLouth Steel, has a burden of proof, too.* They have the burden of establishing that the plaintiff contributed or caused his injuries, that he was contributorily negligent. *And they also have the burden of establishing that there was a contract of indemnity as it related to Valley Consolidated, that there was a contract of indemnity based on the purchase order that you have heard so much about.*

"Let me read also to you an additional instruction. I charge you—and this is with regard to the lawsuit between the plaintiff and the defendant—I charge you that as a matter of law defendant McLouth Steel is not responsible for the projection that the plaintiff claims broke off, and you shall not consider that in determining whether or not they were negligent.

*"Finally, the issue between McLouth Steel and Valley is whether or not there was any agreement for indemnification. All right?"* (Emphasis added.)

*v Connor,* 87 Mich App 664, 678-680; 276 NW2d 458 (1978) (M. J. KELLY, J., *dissenting*).

One of the exceptions to this general rule which has been sparingly allowed exists when the parties seeking to recover attorney fees as damages have been forced to expend money to defend because of the wrongful acts of another. *Fleischer v Buccilli,* 13 Mich App 135, 139; 163 NW2d 637, 639 (1968), *Cagney v Wattles,* 121 Mich 469, 473, 475; 80 NW 245 (1899), *State Farm v Allen, supra, Birou v Thompson-Brown, supra.*

In *State Farm v Allen, supra,* 78-79, this Court cited approvingly the following quotation from McCormick, Damages, § 55, p 246:

"For the expense incurred in the *present* litigation, we have found that our law generally gives the successful party no recompense beyond the taxable costs which ordinarily include only a portion of his expense. This is the case, however wrongful the suit or groundless the defense. On the other hand, *where the present defendant has by his wrongful conduct, be it tort or breach of contract, caused the present plaintiff to defend or prosecute previous legal proceedings, the law reverses its restrictive attitude* and allows the plaintiff to recover all the expense, including counsel fees, reasonably incurred by him in the prior litigation." (Emphasis added.)

We conclude that this recognized exception is broad enough to encompass the factual situation where a passive tortfeasor has been forced to defend against the claims of a plaintiff because of the injuries caused by the active tortfeasor. This conclusion is entirely compatible with the underlying theory of the right to indemnification. As previously noted, the whole notion rests on the concept that the wrongful act of one results in

liability being imposed vicariously on another. See *Provencal v Parker, supra,* 435.

There are, however, limitations to the right to recover incurred expenses, including attorneys' fees. At first blush, *State Farm* seems to imply that this right hinges upon the technical distinction between "prior" litigation and "present" litigation. However, it is apparent that the real thrust of the holding is that reasonable expenses incurred in the primary litigation created by the wrongful acts of another may be recoverable but the expenses incurred in litigation with the actual wrongful party are not recoverable. The underlying distinction in *State Farm* is satisfied when it is recognized that McLouth legally is both a defendant and third-party plaintiff in the instant action. The rationale of *State Farm* should not be ignored, or McLouth penalized, merely because it impleaded Valley into the same action rather than proceeding in a separate subsequent suit. In short, McLouth is entitled to recover its expenses in defending against Warren's claim but not entitled to recover any expenses incurred as a third-party plaintiff against the third-party defendant. See *Hayes v General Motors Corp,* 106 Mich App 188, 200-201; 308 NW2d 452 (1981).

Accordingly, since the provision of the judgment does not apportion the award between those incurred in defending against the claim of the plaintiff, Warren, and those incurred in the suit against the third-party defendant, Valley, we must remand for a determination of such apportionment.

Affirmed in part and reversed in part. Remanded for the entry of judgment consistent with this opinion. No costs on this appeal, no party having fully prevailed.

We retain no further jurisdiction.