*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRAILER X-PRESS, INC.,

  Plaintiff-Appellee,

v

LWJ TRUCKING, LLC, and LAWRENCE W. JONES,

  Defendants/Third-Party Plaintiffs-Appellees,

and

NATIONAL TRANSPORTATION ASSOCIATES, LLC,

  Third-Party Defendant-Appellant.

UNPUBLISHED
May 01, 2026
10:48 AM

No. 369972
Kent Circuit Court
LC No. 20-007768-CB

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

In this insurance-coverage action, third-party defendant-appellant, National Transportation Associates, LLC (NTA), appeals as of right the trial court's judgment, ordering NTA to pay $127,640.02 to defendants/third-party plaintiffs-appellees, LWJ Trucking, LLC, and its owner, Lawrence W. Jones. We affirm in part but remand for the trial court to further articulate its apportionment of damages.

## I. FACTS

This case arises out of a dispute between LWJ Trucking and its insurance agency, NTA, regarding a lapse in insurance coverage on a refrigerated trucking trailer that was later damaged in an accident. LWJ Trucking rented the disputed trailer from Trailer X-Press.

NTA insurance agent Brandon Schira testified that LWJ Trucking owner Jones was initially insured—including the disputed trailer—through Lancer Insurance Company, but in 2019, Lancer decided not to renew the policy. Accordingly, Schira stated that in April 2019, he called Jones to "discuss his renewal terms" and inform Jones that he would be insured through Canal Insurance Company moving forward. Schira explained that during that phone call, Jones stated that he was no longer transporting refrigerated goods and had returned the disputed trailer to Trailer X-Press; therefore, Jones indicated that he would no longer need the refrigeration-malfunction coverage or coverage for the disputed trailer. Schira further testified that during that phone call, he simultaneously completed an Internal Equipment List by highlighting the equipment and coverage that Jones requested. Despite the trial court's prompting, the Internal Equipment List was never produced as evidence. In contrast, Jones denied telling Schira that he did not need insurance on the disputed trailer. According to Jones, Schira stated that the new Canal policy would be the same as the old Lancer policy, but at a lower cost.

The Canal policy began in May 2019 and did not include coverage on the disputed trailer or refrigeration-malfunction insurance. Jones testified that he did not read the Canal insurance policy because Schira had told him that the policy would be unchanged except for the lower price. In December 2019, the disputed trailer was in an accident. Trailer X-Press sued LWJ Trucking and Jones and was awarded summary disposition with damages totaling $134,221.14. LWJ Trucking and Jones in turn sued NTA in a third-party complaint for breach of implied contractual indemnity. But following a bench trial, the trial court found that NTA was liable under a tort theory for failure to procure insurance on the disputed trailer. The trial court ordered NTA to pay $127,640.02 to LWJ Trucking and Jones. NTA now appeals.

## II. ANALYSIS

On appeal, NTA challenges the trial court's legal and factual findings. We address each argument in turn.

### A. PRESERVATION AND STANDARD OF REVIEW

Because NTA's arguments concerning comparative negligence and the reasonableness of Jones's renewal belief are challenges to the trial court's findings and decisions following a bench trial—in which the trial court reframed the nature of LWJ Trucking and Jones's claim—NTA was not required to object to those findings to preserve them for appellate review. See MCR 2.517(A)(7); *Morris v Clawson Tank Co*, 459 Mich 256, 275 n 13; 587 NW2d 253 (1998). And because the issue of damages was raised, addressed, and decided by the trial court through LWJ Trucking and Jones's third-party complaint, that issue is preserved for appellate review. See *George v Allstate Ins Co*, 329 Mich App 448, 453; 942 NW2d 628 (2019).

"A trial court's factual findings in a bench trial are reviewed for clear error." *Astemborski v Manetta*, 341 Mich App 190, 195; 988 NW2d 857 (2022) (quotation marks and citation omitted). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made. This Court is especially deferential to the trial court's superior ability to judge of the relative credibility of witnesses." *Id*. (quotation marks and citation omitted). "We review a trial court's conclusions of law in a bench trial de novo." *Id*. at 196.

## B. COMPARATIVE NEGLIGENCE

On appeal, NTA first argues that the trial court erred by failing to consider and make findings regarding comparative negligence. We disagree.

"Michigan law recognizes a cause of action in tort for an insurance agent's failure to procure requested insurance coverage . . . ." *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 324; 661 NW2d 248 (2003). This Court has long held "that comparative negligence should be applied in *all* common-law tort actions sounding in negligence where the defendant's misconduct falls short of being intentional." *Vining v Detroit*, 162 Mich App 720, 727; 413 NW2d 486 (1987) (emphasis added). "[T]he comparative fault statutes are operative against each person, including a plaintiff, whose conduct is found to be a proximate cause of the plaintiff's damages." *Lamp v Reynolds*, 249 Mich App 591, 602-603; 645 NW2d 311 (2002). MCL 600.6304(1) provides as follows:

> (1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:

> (a) The total amount of each plaintiff's damages.

> (b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff and each person released from liability under section 2925d, regardless of whether the person was or could have been named as a party to the action.

Applied specifically, in an insurance tort action, "defendants are entitled under the statutory provisions for comparative fault, to seek an apportionment of fault for the alleged liability concerning plaintiffs' lack of insurance . . . ." *Holton*, 255 Mich App at 326. "A defendant attempting to mitigate his liability through a comparative fault defense has the burden of alleging and proving that another person's conduct was a proximate cause of the plaintiff's damages." *Id*. "[T]o establish the requisite causation between an alleged wrongful act and resulting damages, the actor's conduct must be shown to be both a cause in fact and a legal or proximate cause of the plaintiff's damages." *Id*. Although "causation is generally a matter for the trier of fact, if there is no issue of material fact, then the issue is one of law for the court." *Id*. "Cause in fact requires that the harmful result would not have come about but for the defendant's . . . conduct." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 157; 871 NW2d 530 (2015) (quotation marks and citation omitted). "Whether the proximate cause or legal cause is established normally requires examining the foreseeability of the consequences and whether the defendant should be held legally responsible for those consequences." *Id*.

In this case, NTA proposes two potential sources of comparative fault: (1) Trailer X-Press employee Karina Klein, who learned that the disputed trailer did not have coverage before the accident occurred; and (2) Jones, who admittedly failed to read the new policy documents.

## 1. KLEIN'S COMPARATIVE FAULT

Klein testified that in May 2019, she e-mailed NTA to confirm that the two trailers Jones rented were covered by insurance. NTA promptly responded, notifying Klein that the disputed trailer was not covered and directing Klein to contact LWJ Trucking for further information. Klein admitted that it was a mistake for her not to follow up with LWJ Trucking, although she was not obligated to do so under the lease agreement. The trial court made no comparative-fault finding regarding Klein's actions.

"[W]hen there is an assertion that a person's negligence is a proximate cause of the damage sustained by a plaintiff, before fault may be allocated to that person under the comparative-fault statutes, there must be proof that the person owed a legal duty to the injured party." *Estate of Goodwin by Goodwin v Northwest Mich Fair Ass'n*, 325 Mich App 129, 141; 923 NW2d 894 (2018). "Without owing a duty to the injured party, the 'negligent' actor could not have proximately caused the injury and could not be at 'fault' for purposes of the comparative fault statutes." *Id*. (quotation marks and citation omitted).

As this Court has stated, the fundamental principle distinguishing a cause of action in tort from one in contract is the concept of duty. *Rinaldo's Constr Corp v Mich Bell Tel Co*, 454 Mich 65, 83; 559 NW2d 647 (1997). Accordingly, in cases of nonfeasance, a defendant who fails to perform his contractual duties is ordinarily not liable in tort because, as a general tort rule, "there is no duty that obligates one person to aid or protect another." *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 498-499; 418 NW2d 381 (1988). As a result, when a defendant completely fails to perform his contractual obligations, "[w]hat we are left with is defendant's failure to complete his contracted-for performance," which "is not a duty imposed by the law upon all, the violation of which gives rise to a tort action" but, instead, is "a duty arising out of the intentions of the [contracting] parties themselves and owed only to those specific individuals to whom the promise runs." *Hart v Ludwig*, 347 Mich 559, 565–566, 79 NW2d 895 (1956).

In this case, there is no breach of contract for Klein's failure to inform LWJ Trucking that the subject truck was not insured because there was no term in Trailer X-Press's contract requiring her to do so. Rather, it was LWJ Trucking's contractual obligation to insure the truck. There is likewise no action for tort because: (1) Klein's failure to inform LWJ Trucking about the lack of insurance would sound in contract, if such a term existed in the contract; and (2) Klein had no legal duty to inform LWJ Trucking about the lack of insurance. See *Williams*, 429 Mich at 498-499; *Hart*, 347 Mich at 565–566. Accordingly, because Trailer X-Press—through its employee, Klein—had no legal duty to inform LWJ Trucking about the lack of insurance, Trailer X-Press cannot be comparatively negligent in this regard, and the trial court did not err by not making comparative-negligence findings with respect to Trailer X-Press. See *Estate of Goodwin*, 325 Mich App at 141.

## 2. JONES'S COMPARATIVE FAULT

Jones testified that he did not read the Canal insurance policy documents. In a tort action against an insurance agency for negligent failure to procure insurance coverage, a "plaintiff's admitted failure to read the policy could qualify as comparative negligence . . . ." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 33; 761 NW2d 151 (2008). In such instances, the

-4-

trier of fact should consider whether the plaintiff "unreasonably failed" to read the relevant insurance policy documents. *Id*. In this case, as part of its analysis of the renewal rule, the trial court considered whether Jones "unreasonably failed" to read the Canal policy. See *id*. The trial court concluded that Jones did not unreasonably fail to read the new policy because he reasonably believed that it was an effective renewal. Therefore, the trial court inadvertently yet appropriately addressed the extent of Jones's comparative fault. See MCL 600.6304; *Zaremba Equip*, 280 Mich App at 33. Nonetheless, NTA argues that the trial court erred by finding that Jones reasonably believed that the Canal policy was an effective renewal of the Lancer policy.

"[A]s a general rule, an insured must read his or her insurance policy." *Zaremba Equip*, 280 Mich App at 29. But "there is an exception to the rule where a policy is renewed without actual notice to the insured that the policy has been altered." *Parmet Homes, Inc v Republic Ins Co*, 111 Mich App 140, 145; 314 NW2d 453 (1981). Additionally, in *Parmet Homes*, 111 Mich App at 145, this Court upheld the following jury instruction:

> If you find that [the plaintiff] acted reasonably in believing the policy to be a renewal of the [prior] policy, then [the plaintiff] does not have the duty to read the policy. If you find that a reasonably careful person would have read his policy under the circumstances which you find existed in this case, you may consider this with respect to the plaintiff's conduct in considering contributory negligence.

In that case, the defendant initially sold the plaintiff an insurance policy through the Insurance Company of North America (INA), but when the INA policy was about to expire, the defendant procured a new policy—with one critical difference—for plaintiff through Republic Insurance Company. *Id*. at 143. The parties presented conflicting evidence regarding whether the plaintiff was informed of the change. *Id*. This Court concluded that the aforementioned jury instruction was proper—even though the new policy was not a renewal—because the plaintiff presented evidence that it was led to believe that the new policy was a renewal. *Id*. at 145; see also *Industro Motive Corp v Morris Agency, Inc*, 76 Mich App 390, 391-392, 396; 256 NW2d 607 (1977) (concluding that a new insurance policy was effectively a renewal after the plaintiff's insurance agent informed the plaintiff that it "could supply identical coverage at a reduced rate" from a different insurance provider).

In this case, the trial court concluded that "Jones reasonably believed that the [new] Canal policy was effectively a renewal of the Lancer policy"; therefore, Jones had no duty to read the new policy. The court noted that: (1) when the new policy was e-mailed to Jones, the e-mail referred to the policy documents as "*renewal* certificates"; (2) Jones testified that Schira "specifically told him that the Canal coverages and terms were the same as the Lancer policy"; and (3) Schira "repeatedly referred to the Canal policy as a 'renewal' " during his testimony. The trial court acknowledged Schira's testimony that during his phone call with Jones, "Jones specifically informed him that he was not hauling refrigerated goods at the time and was no longer using [the trailer] and no longer needed to insure it." But the trial court emphasized that it found Schira's testimony "[s]omewhat concerning" in large part because of NTA's failure to produce the "very important" Internal Equipment List that the trial court sought—which was completed during Schira and Jones's phone call and would have shown whether Jones requested the trailer's removal from coverage. Accordingly, considering the trial court's superior ability to judge the relative credibility of witnesses, the trial court did not clearly err by finding that Jones reasonably believed

that the Canal policy was an effective renewal of the Lancer policy. See *Astemborski*, 341 Mich App at 195.

## C. APPORTIONMENT OF DAMAGES

NTA further argues that the trial court failed to articulate its apportionment of damages, and in doing so appears to have erred by awarding damages for attorney fees or LWJ Trucking's unrelated failure to make payments to Trailer X-Press. We remand for the trial court to further articulate its apportionment of damages.

In this case, the trial court ordered NTA to pay $127,640.02 to LWJ Trucking "for damage to the trailer, interest, and attorney fees as requested by plaintiff in its Amended Third Party complaint." LWJ Trucking and Jones's amended third-party complaint requested $127,640.02 in damages for "damage to the RF Trailer, interest, and attorney fees," but it did not break down a calculation of those damages. Without further information, we cannot definitively say what the damage award accounted for or how it was calculated. When a trial court's judgment does not apportion damages, and there is a question regarding whether any damages were improperly apportioned to unrecoverable expenses, remand for a determination of damage apportionment is proper. See *Warren v McLouth Steel Corp*, 111 Mich App 496, 509; 314 NW2d 666 (1981). Accordingly, because the trial court's judgment did not apportion damages in this case, and there is a question regarding whether any damages were improperly apportioned regarding unrecoverable expenses, remand for a determination of damage apportionment is proper. See *id*.

## III. CONCLUSION

We affirm the trial court's conclusion that Jones did not have a duty to read the new policy because he reasonably believed that it was a renewal, but we remand for the trial court to further articulate its apportionment of damages. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney
/s/ Randy J. Wallace