BURNSIDE v STATE FARM FIRE AND CASUALTY COMPANY

Docket No. 147884. Submitted September 7, 1994, at Grand Rapids. Decided January 17, 1995, at 10:30 A.M. Leave to appeal sought.

Harlan and Margaret Burnside brought an action in the Kent Circuit Court against State Farm Fire and Casualty Company, seeking damages for the failure of the defendant to pay their claim under a fire insurance policy when their home burned and alleging breach of the insurance contract, tortious bad-faith handling of the insurance claim, and intentional infliction of emotional distress. The tort claim was dismissed before trial, and the jury returned a verdict for the defendant with respect to the claim of intentional infliction of emotional distress, found that the defendant breached the insurance contract, and returned a verdict for the plaintiffs with respect to that claim for the maximum allowable damages. The jury also awarded the plaintiffs penalty interest pursuant to the Uniform Trade Practices Act, MCL 500.2006; MSA 24.12006, and returned a special verdict finding that the defendant acted in bad faith when it refused to pay the plaintiffs' claim. The court, Dennis B. Leiber, J., awarded the plaintiffs mediation sanctions, but denied the plaintiffs' motion for attorney fees and actual costs, holding that attorney fees and actual costs are not recoverable as a result of a bad-faith breach of a fire insurance contract. The plaintiffs appealed.

The Court of Appeals *held:*

It is well-settled that attorney fees are not allowed, either as costs or as damages, unless authorized expressly by statute, by court rule, or by a recognized court-made exception. No statute or court rule authorizes attorney fees under these circumstances. The courts of this state have not recognized an exception to the general prohibition against an award of attorney fees under these circumstances, and there is no sound public policy reason to create such an exception in this case in view of the fact that the Legislature addressed the problem of the bad-faith handling of fire insurance claims by insurance companies

REFERENCES

Am Jur 2d, Costs § 72.

See ALR Index under Attorneys' Fees; Costs of Actions.

by the adoption of the penalty interest provision of the Uniform Trade Practices Act.

Affirmed.

M. J. TALBOT, J., concurring, stated that a mere breach of contract, whether in good faith or not, does not create an independent tort action for exemplary or consequential damages such as attorney fees and, in any event, that it is clear that the Legislature did not intend attorney fees under these circumstances, because it provided for penalty interest pursuant to the Uniform Trade Practices Act and, although it provided for attorney fees for bad-faith handling of claims under the no-fault act, it made no similar provision with respect to fire insurance claims.

COSTS — ATTORNEY FEES — FIRE INSURANCE — BAD FAITH.

It is well-settled that attorney fees are not allowed, either as costs or as damages, unless recovery of those fees is authorized expressly by statute, by court rule, or by a recognized court-made exception; attorney fees are not authorized by statute or court rule where there has been a breach of contract by a fire insurance company arising out of the bad-faith handling of a fire insurance claim, and there is neither a recognized court-made exception to the general rule nor any strong public policy reason to fashion such an exception under those circumstances.

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by *James S. Brady* and *Matthew L. Vicari*), for the plaintiffs.

*Smith, Haughey, Rice & Roegge* (by *John D. Vander Ploeg* and *Phillip K. Mowers*), and *Tolley, Verwys, VandenBosch & Walton, P.C.* (by *David L. Harrison*), for the defendant.

Before: MACKENZIE, P.J., and GRIFFIN and M. J. TALBOT,* JJ.

GRIFFIN, J. Plaintiffs appeal as of right from an order of the circuit court denying their motion for an award of costs and attorney fees against defendant in this breach of contract action. Plaintiffs'

* Circuit judge, sitting on the Court of Appeals by assignment.

motion was based upon the jury's determination
that defendant breached its implied contractual
duty as an insurer to act fairly and reasonably in
investigating and refusing to pay plaintiffs' claim.
We affirm. In doing so, we hold that the applica-
tion of the American rule precludes the recovery
of attorney fees incurred as the result of an insur-
er's bad-faith refusal to pay a claim.

I

On January 8, 1989, plaintiffs' home was de-
stroyed by fire. Plaintiffs' residence and its con-
tents were insured by defendant against loss
caused by fire. On April 17, 1989, plaintiffs submit-
ted a proof of loss to defendant totaling
$229,627.04, plus additional living expenses. Fol-
lowing a lengthy investigation, defendant denied
plaintiffs' claim on September 13, 1989, citing the
following reasons: (1) the fire was intentionally
caused by plaintiffs, and (2) plaintiffs misrepre-
sented and concealed material facts and falsely
swore to the cause of the fire.

On October 5, 1989, plaintiffs brought the in-
stant action against defendant. In their complaint,
plaintiffs alleged the following claims: (1) breach of
the insurance contract, including violations of
MCL 500.2836; MSA 24.12836 and the Uniform
Trade Practices Act (UTPA), MCL 500.2001 et seq.;
MSA 24.12001 et seq., (2) commission of the tort of
bad-faith handling of an insurance claim, and (3)
intentional infliction of emotional distress. Follow-
ing defendant's motion for summary disposition,
the trial court dismissed plaintiffs' bad-faith tort
claim, but denied the motion with respect to plain-
tiffs' claims of breach of contract and intentional
infliction of emotional distress.

On June 17, 1991, a lengthy jury trial was

commenced. At the close of proofs, the trial court gave the following jury instruction regarding the award of attorney fees:

> Michigan law recognizes a contractual obligation on the part of an insurance company to act fairly and reasonably in the investigation of a claim and in denying payment of its insureds' claim. You must make a determination whether State Farm Fire and Casualty Company acted fairly and reasonably in its investigation of the claim and in denying payment of its insureds' claim.
>
> Michigan law further permits an award of attorney fees to be determined by a judge as a proper measure of damages arising out of the breach of an insurer's implied contractual duty to act fairly and reasonably in investigating and refusing to pay an insured's claim.

The jury returned a verdict in favor of defendant with respect to plaintiffs' claim of intentional infliction of emotional distress. With respect to the contract claim, the jury found that defendant had breached the insurance contract and assessed the maximum allowable damages. The jury also awarded plaintiffs penalty interest at the rate of twelve percent per annum under § 2006 of the UTPA, MCL 500.2006; MSA 24.12006. Pursuant to a special verdict form, the jury also found that defendant acted in "bad faith" when it refused to pay plaintiffs' claim.[1] A verdict in plaintiffs' favor with respect to defendant's counterclaim was also rendered.

On September 12, 1991, plaintiffs moved for attorney fees and actual costs on the basis of the jury's determination that defendant acted in bad

---

[1] Defendant has not filed a cross appeal. We note, however, that the tort of bad-faith breach of an insurance contract does not exist in Michigan. *Runions v Auto-Owners Ins Co*, 197 Mich App 105; 495 NW2d 166 (1992).

faith and for mediation sanctions pursuant to MCR 2.403(O). The trial court awarded plaintiffs $109,933.67 in mediation sanctions but ruled, contrary to its jury instruction at trial, that attorney fees and actual costs were not recoverable as the result of the bad-faith breach of an insurance contract. The trial court determined that under these circumstances the recovery of attorney fees and actual costs were not authorized by court rule, statute, or controlling case law.

II

On appeal, plaintiffs contend that the trial court erred in denying their motion for attorney fees and actual costs in light of the jury's finding that defendant refused in bad faith to pay their claim. Plaintiffs assert that under the common law of Michigan, an insurer found to have violated its duty to act "fairly and reasonably" must reimburse the insured party its full contract damages in enforcing the insurance contract. In response, defendant maintains that Michigan law does not allow a party to recover attorney fees and actual costs because of the bad-faith breach of an insurance contract. Further, defendant argues that an award of penalty interest under the UTPA is the exclusive remedy when an insurance company acts in bad faith. After thorough review, we agree with defendant's argument.

III

In Michigan, it is well-settled that the recovery of attorney fees is governed by the "American rule." *Matras v Amoco Oil Co,* 424 Mich 675; 385 NW2d 586 (1986). Under the American rule, attorney fees are generally not allowed, as either costs

or damages, unless recovery is expressly autho-
rized by statute, court rule, or a recognized excep-
tion. *Clute v General Accident Assurance Co of
Canada,* 177 Mich App 411, 417; 442 NW2d 689
(1989). See also *Brooks v Rose,* 191 Mich App 565,
575; 478 NW2d 731 (1991); *State Farm Mutual
Automobile Ins Co v Allen,* 50 Mich App 71, 74;
212 NW2d 821 (1973). Exceptions to the general
rule are construed narrowly. *Rose, supra; Scott v
Hurd-Corrigan Moving & Storage Co, Inc,* 103
Mich App 322, 347; 302 NW2d 867 (1981).

Plaintiffs, relying on the decisions of the Sixth
Circuit Court of Appeals in *Murphy v Cincinnati
Ins Co,* 772 F2d 273 (CA 6, 1985), argue that they
are entitled to attorney fees as damages arising
from defendant's bad-faith refusal to provide cov-
erage. In *Murphy,* the insureds were awarded the
proceeds of their fire insurance policy and
$16,637.59 in attorney fees incurred as a result of
the insurance company's bad-faith refusal to pay
their claim. In upholding the lower court's award
of attorney fees, the Sixth Circuit Court of Appeals
interpreted Michigan case law to permit the recov-
ery of attorney fees as an item of damages arising
out of an insurer's breach of its implied contrac-
tual duty to act fairly and reasonably in investi-
gating and refusing to pay an insured's claim. In
reaching this decision, the Sixth Circuit noted that
Michigan follows the rule in *Hadley v Baxendale,*
9 Exch 341; 156 Eng Rep 145 (1854),[2] that a party

[2] In *Huler v Nassar,* 322 Mich 1, 8; 33 NW2d 637 (1948), quoting 15
Am Jur, Damages, § 52, p 454, our Supreme Court set forth the two
parts of the rule stated in *Hadley v Baxendale:*

"(1) Where there are no special circumstances to distinguish
the contract involved from the great mass of contracts of the
same kind, the damages recoverable are such as would natu-
rally and generally result from the breach according to the
usual course of things, and (2) where there are special circum-
stances in the contract and its observance would take the

who fails to perform its contractual obligations becomes liable for all foreseeable damages flowing from the breach.

Underlying the Sixth Circuit's decision in *Murphy* was our Supreme Court's holding in *Kewin v Massachusetts Mutual Life Ins Co*, 409 Mich 401; 295 NW2d 50 (1980). In *Kewin*, the Supreme Court addressed the issues whether, and under what circumstances, mental distress and exemplary damages are recoverable as a result of a bad-faith breach of a commercial contract. The instant issue was noted but not addressed by the *Kewin* Court. *Id.* at 421, n 2. In holding that mental anguish damages are not recoverable unless contemplated by the parties at the time of the contract, the Supreme Court reaffirmed the application of the *Hadley v Baxendale* rule in the context of commercial contracts. Moreover, the Supreme Court noted that application of the rule "in the commercial contract situation generally results in a limitation of damages to the monetary value of the contract had the breaching party fully performed under it." *Id.* at 414-415.

Implicit in the holding in *Kewin*, and reaffirmed in *Valentine v General American Credit, Inc*, 420 Mich 256; 362 NW2d 628 (1984), however, was the willingness of our Supreme Court to apply less than scrupulously the foreseeability test stated in *Hadley v Baxendale* in the face of another controlling point of law. In *Valentine*, the Supreme Court held that although mental distress damages are foreseeable within the rule of *Hadley v Baxendale* for virtually all breach of contract actions, the general rule in most jurisdictions is to deny recov-

contract out of the natural or usual course of things, damages which result in consequence of those special circumstances are recoverable if, and only if, those special circumstances were communicated or known to the party breaching the contract at the time he entered into the contract."

ery. As a rationale for its decision to deny recovery, the Court explained that the rule barring the recovery of mental distress damages is "a gloss on the generality of the rule stated in *Hadley v Baxendale* [and] is fully applicable to an action for breach of an employment contract." 420 Mich 260-261.

Similarly, other jurisdictions have recognized the American rule's limitation upon the recovery of attorney fees incurred as a foreseeable result of an insurer's breach of a contract to provide coverage:

> These contentions lay bare the underlying conflict between the principle that breach of contract damages will be awarded to protect the promisee's expectation interest and the principle, known as the American rule, that costs awarded to a prevailing party ordinarily do not include the counsel fees of the prevailing party.
>
> Where a liability insurer has promised to defend the insured against a covered claim and fails to do so, where a health insurer has promised to pay certain benefits for the insured to a third-party provider and fails to do so, and, indeed, where any promisor breaches the contract and causes loss to the promisee, expense incurred by the promisee in engaging counsel to press the breach of contract claim "may fairly and reasonably be considered [as] arising naturally, *i.e.,* according to the usual course of things, from such breach of contract itself." *Hadley v Baxendale,* 9 Ex 341, 354; 156 Eng Rep 145, 151 (1854).
>
> The American rule stands as a barrier to the recovery, as consequential damages, of foreseeable counsel fees incurred in enforcing remedies for the breach. The rule has been part of the jurisprudence of this country for nearly 200 years.
>
> "During the late colonial period, legislation provided for fee recovery as an aspect of comprehensive fee regulation. But this regulatory scheme did

not long survive the Revolution. During the first half of the nineteenth century, lawyers freed themselves from fee regulation and gained the right to charge clients what the market would bear. As a result, the right to recover attorney fees from an opposing party became an unimportant vestige. This triumph of fee contracts between lawyer and client as the financial basis of litigation prepared the way for legislators and judges to proclaim the principle that one party should not be liable for an opponent's legal expenses." [*Collier v MD-Individual Practice Ass'n, Inc,* 327 Md 1, 13-14; 607 A2d 537 (1992), citing Leubsdorf, *Toward a History of the American Rule on Attorney Fee Recovery,* 47 Law & Contemp Probs 9 (1984).]

See also *Rhodes v COPIC Ins Co,* 819 P2d 1060, 1062 (Colo App, 1991).

IV

After applying these principles in the present case, we reject the Sixth Circuit's decision in *Murphy* and hold that the recovery of attorney fees incurred as a result of an insurer's bad-faith refusal to pay an insured's claim is governed by the American rule. Like the Court in *Valentine,* we conclude that the American rule is a "gloss on the generality" of the foreseeability test stated in *Hadley v Baxendale.*

We find unavailing plaintiffs' argument that the American rule is inapplicable when an insurer acts in bad faith. In general, breach of contract damages are not awarded to punish a wrongdoer. We see no reason to carve out an exception in this instance when none exists.[3] An insured's right to

---

[3] We share the sentiments of the Maryland Court of Appeals in *Collier v MD-Individual Practice Ass'n, Inc,* 327 MD 1, 17; 607 A2d 537 (1992), that from the standpoint of a strict application of the American rule, there is no logical reason why attorney fees should be

recover attorney fees as an element of damages is not triggered by the foreseeability of loss. Instead, attorney fees are recoverable only when expressly authorized by statute, court rule, or a recognized exception.

In this case, plaintiffs concede that the recovery of attorney fees and actual costs are not authorized by statute or court rule. Furthermore, plaintiffs' public policy arguments have already been addressed by the Legislature by the enactment of the UTPA. As stated by defendant in its brief:

> The insurer which acts in bad faith, however, does not do so with impunity. The Legislature has provided in the Uniform Trade Practices Act, MCL 500.2001 *et seq.*; MSA 24.12001 *et seq.*, that an insurer is liable for penalty interest if it fails to timely pay a claim not reasonably in dispute. *McCahill v Commercial Union Ins Co*, 179 Mich App 761, 778-778 [sic]; 446 NW2d 579 (1989). The statute is intended to provide a penalty to be assessed against recalcitrant insurers who procrastinate or are dilatory in paying meritorious claims in bad faith. *Commercial Union Ins Co v Liberty Mut Ins Co*, 426 Mich 127, 136, n 5; 393 NW2d 161 (1986). This statute evinces an intent to compensate a plaintiff for the delay in recovering funds rightfully his or hers. *Medley v Canady*, 126 Mich App 739, 744; 337 NW2d 909 (1983). The UTPA provides other consequences enforceable by the Insurance Commissioner in what has been described as "a comprehensive, exclusive scheme of enforcement of the rights and duties it creates." *Crossley v Allstate Ins Co*, 155 Mich App 694, 697; 400 NW2d 625 (1986).

Finally, we disagree with plaintiffs' argument that their right to recover attorney fees and actual

recoverable as damages in some instances "when successful plaintiffs' actions for other breaches of insurance contracts, or for breaches of other contracts, do not ordinarily include those counsel fees."

costs is controlled by *Pollock v Fire Ins Exchange,* 167 Mich App 415; 423 NW2d 234 (1988), and *Wendt v Auto-Owners Ins Co,* 156 Mich App 19; 401 NW2d 375 (1986). Neither case dealt with the precise issue of the recovery of attorney fees by an insured or addressed the interplay between the American rule and the rule stated in *Hadley v Baxendale.* In any event, we are not persuaded by these decisions and decline to follow them.

Our resolution of this issue renders it unnecessary to address plaintiffs' remaining issue on appeal.

Affirmed.

M. J. TALBOT, J. *(concurring.)* I concur. Quite simply, no Michigan authority exists that would permit the recovery of attorney fees by a plaintiff for a bad-faith breach of an insurance contract. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980), reaffirmed the general principle that damages from a breach of a commercial contract are limited to the monetary value of the contract. While *Kewin* does allow for recovery of damages beyond the contract where there is proof of tortious conduct independent of the breach or where contemplated by the parties at the time of the contract, the law in Michigan is still very clear: damages outside the contract are extraordinary and conditional upon these two very narrow instances. Neither of these circumstances exists in this case.

Furthermore, when there is a mere breach of contract, whether in good faith or not, there is no independent tortious action and, hence, no basis for exemplary damages. Every contract is accompanied by a common-law duty to use ordinary care in the performance of that contract. *Nelson v Northwestern Savings & Loan Ass'n,* 146 Mich

App 505; 381 NW2d 757 (1985). That duty, however, is not independent of the contract. It is not a duty imposed by law upon all that gives rise to a tort action. It is a duty arising out of that contract only and owed only to the contracting parties. Therefore, a tort action with exemplary or consequential damages cannot lie. *Kewin, supra* at 422.

Finally, the Legislature has established a statutory scheme whereby the insurer that fails to make prompt payment of a valid claim does not do so with impunity. The twelve percent award provided for by MCL 500.2006(4); MSA 24.12006(4) appears to be the penalty that the Legislature saw fit to impose upon an insurance company in a situation such as this. It is noteworthy that the Legislature specifically included a provision in the no-fault act that provides for the payment of the insured's attorney fees for an unreasonable failure to pay a claim. MCL 500.3148(1); MSA 24.13148. The portion of the Insurance Code covering fire insurance contracts, however, does not contain a similar provision for recovery of attorney fees for failure to make payment on a valid fire insurance claim.