*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NILES JOHNSON,

    Plaintiff,

v

USA UNDERWRITERS,

    Defendant/Cross-Defendant-
    Appellant,

and

COURTNEY EISEMANN and STEVEN
VANDEINSE,

    Defendants,

and

CITIZENS INSURANCE COMPANY OF
AMERICA,

    Defendant/Cross-Plaintiff/Appellee.

FOR PUBLICATION
May 14, 2019
9:25 a.m.

No. 340323
Washtenaw Circuit Court
LC No. 16-000191-NF

Before: BECKERING, P.J., and RIORDAN and CAMERON, JJ.

CAMERON, J.

Defendant/cross-defendant, USA Underwriters, appeals the trial court's stipulated order dismissing with prejudice plaintiff, Niles Johnson's, complaint against defendants, Courtney Eisemann, Steven Vandeinse, and USA. On appeal, USA claims the trial court committed multiple errors when it denied USA's motion for summary disposition and instead granted defendant/cross-plaintiff, Citizens Insurance Company of America's, motion for summary disposition as to its cross-claim against USA, granted Citizens's motion for entry of judgment, and granted Citizens's motion for attorney fees. We reverse the trial court's order and remand this case for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2015, Vandeinse purchased a 2011 Chevy Impala from a used car dealership in Ypsilanti. Before the dealership would finalize the sale, Vandeinse was required to obtain automobile insurance. Vandeinse went to a nearby L.A. Insurance agency and asked the insurance agent, Jennifer Essak, for a policy to cover the Impala. According to Vandeinse, he asked her for a "full coverage policy." Vandeinse left the agency with a USA insurance policy that provided collision and comprehensive insurance coverages only. The insurance agent, however, stated in her affidavit provided during discovery that she "explained to [Vandeinse] the difference between no-fault coverage and collision and comprehensive coverage and offered to assist him with obtaining both." Often times, "it was less expensive for the customer to obtain no-fault coverage from one carrier and then collision and comprehensive coverage through [USA]." She further asserted that Vandeinse "declined my offer to assist him with obtaining no-fault coverage, and asked only for collision and comprehensive coverage through [USA]."

The application for automobile insurance that Vandeinse completed was entitled "Application for Physical Damage Insurance Economy Program" through USA. The declarations section of the application stated: "This application is for Auto Physical Damage Insurance only. It does not provide bodily injury, property damage or any other Michigan statutory No-Fault coverages." Additionally, Vandeinse initialed a provision in the application that stated: "**PHYSICAL DAMAGE ONLY.** This insurance is physical damage only coverage and does not meet the requirements of the Michigan No-fault Act, Chapter 31 of the Michigan Insurance Code." After obtaining the collision and comprehensive insurance policy, Vandeinse purchased the Impala from the dealership using a certificate of insurance that USA provided. Like the insurance application, the certificate of insurance[1] stated, "This insurance is physical damage only, coverage does not meet the requirements of the Michigan No-Fault Act, Chapter 31 of the Michigan Insurance Code." Citizens asserts on appeal that, other than this disclosure, the certificate "looks like a regular no-fault certificate . . . that you would take to the Secretary of State to get your tabs renewed." The Michigan Secretary of State apparently accepted this certificate and registered the Impala with the State of Michigan.

On September 8, 2015, codefendant Eisemenn drove the Impala while Vandeinse rode in the passenger seat. As Eisemann exited a parking lot, she struck Johnson, who was riding his bicycle on the sidewalk. Johnson sustained injuries and was transported to the hospital. On February 29, 2016, Johnson filed a complaint against Eisemann, Vandeinse, and the Michigan Automobile Insurance Placement Facility (the Facility). The parties eventually stipulated to adding USA as a defendant to the amended complaint, and to substitute Citizens as a defendant and dismiss the Facility. Citizens filed a motion for summary disposition under MCR 2.116(C)(10), seeking dismissal from the lawsuit because Vandeinse had a no-fault policy through USA, and therefore, Johnson was ineligible for any benefits through the Facility. USA

---

[1] "Certificate of insurance" is defined as "a document, regardless of how [it is] titled or described, that is prepared by an insurer or insurance producer that is a statement or summary of an insured's property or casualty insurance coverage." MCL 500.2270(a).

filed its own motion for summary disposition under MCR 2.116(C)(8), claiming USA's insurance policy did not include mandatory no-fault coverage. The trial court ultimately held that USA's practice of selling automobile insurance with certificates of insurance but without mandatory no-fault coverages amounted to "an intent to defraud" and denied USA's motion for summary disposition. The trial court signaled to the parties that it would wait for any claims to reform the policy until the issue "ripen[ed]."

Citizens then filed a motion for summary disposition against USA under MCR 2.116(C)(10). Citizens sought reformation of USA's policy to include mandatory no-fault coverages as a matter of law and public policy. According to Citizens, issuing an insurance policy with only optional coverages was a violation of MCL 500.3101(1) and against the public policy of the state to ensure that all drivers have mandatory no-fault coverage. Moreover, Citizens argued that USA and the insurance agent misrepresented the type of insurance, therefore, necessitating reformation. In response, USA argued that Citizens had not shown that reformation was an acceptable remedy because there was no mistake or fraud by either party to the insurance contract, especially in light of the insurance agent's affidavit, and the no-fault act does not prevent insurers from providing only collision and comprehensive insurance policies. The trial court granted Citizens's motion for summary disposition, concluding that USA's policy was issued "with an intent to deceive the consumer and the Secretary of State, [and] that the policy violates the Michigan No-Fault Act." Therefore, the trial court reformed USA's insurance policy "to include no fault/PIP coverage, liability coverage, and property damage."

On appeal, USA argues the trial court erred when it reformed the insurance policy to include mandatory no-fault coverages because (1) there was no mistake or fraud by either party, (2) issuing insurance policies with collision and comprehensive coverages only does not contravene the no-fault act, and (3) public policy does not allow for reformation under these circumstances. We agree.

## II. REFORMATION OF USA'S POLICY

### A. STANDARD OF REVIEW

This Court reviews de novo motions for summary disposition under MCR 2.116(C)(10). *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). MCR 2.116(C)(10) provides that a trial court may grant judgment on all or part of a claim where "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." The moving party must support its motion by affidavits, depositions, admissions, or other documentary evidence. *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). If the moving party properly supports its motion, the opposing party then has the burden to demonstrate with evidentiary materials that a disputed material fact exists. *Id.* at 440-441. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court, reviewing the record in the same manner as the trial court, "must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993).

Insofar as the motion for summary disposition involves questions regarding the proper interpretation of a contract, this Court reviews de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Additionally, "[t]his Court reviews de novo the trial court's decision to grant or deny equitable relief." *Olsen v Porter*, 213 Mich App 25, 28; 539 NW2d 523 (1995). When considering whether a trial court properly ordered reformation, this Court must be "mindful that courts are required to proceed with the utmost caution in exercising jurisdiction to reform written instruments." *Id*. To reform a contract, "the facts necessary for the allowance of the remedy shall be proved by clear and convincing evidence." *Woolner v Layne*, 384 Mich 316, 319; 181 NW2d 907 (1970) (quotation marks and citation omitted). Evidence is clear and convincing only if it produces "in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (citation omitted).

## B. REFORMATION BASED ON MISTAKE AND FRAUD

USA first argues that there was insufficient evidence to support reformation of USA's insurance policy on the basis of fraud. Therefore, USA asserts that the trial court erred when it granted summary disposition in favor of Citizens and reformed the policy to include no-fault, liability, and property damage coverages on the basis of USA's fraudulent conduct. We agree.

Courts of equity have the power to reform an insurance contract to conform to the agreement actually made. See *Casey v Auto Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006). Reformation may arise if a plaintiff proves "a mutual mistake of fact, or mistake on one side and fraud on the other, by clear and convincing evidence." *Id*. Importantly, reformation is not warranted when there is only a mistake in law, i.e., a mistake where one of the parties is mistaken as to the legal effect of an agreement. *Id*.; see also *Olsen*, 213 Mich App at 29 ("[R]eformation will generally not be granted for a mistake of law.").

There are two types of fraud: actionable fraud and silent fraud. Actionable fraud has the following requirements:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*M&D, Inc v WB McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998).]

On the other hand, "[s]ilent fraud, also known as fraudulent concealment, acknowledges that suppression of a material fact, 'which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud.'" *Maurer v Fremont Ins Co*, 325 Mich App 685, 695; ___ NW2d ___ (2018), quoting *M&D, Inc*, 231 Mich App at 29. Furthermore, "the party having a legal or equitable duty to disclose must have concealed the material fact with an intent to defraud." *Maurer*, 325 Mich App at 695.

Fraud, however, "is not a necessary element of every action to reform an agreement on the basis of a unilateral mistake." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 380; 761 NW2d 353 (2008). Our Supreme Court has also held:

> [I]f one party at the time of the execution of a written instrument knows not only that the writing does not accurately express the intention of the other party as to the terms to be embodied therein, but knows what that intention is, the latter can have the writing reformed so that it will express that intention. [*Woolner*, 384 Mich at 318-319.]

Stated differently, a contract may be reformed when one party to a contract made a mistake and the other party knows about the mistake but remains silent about it, i.e., there was inequitable conduct. *Johnson Family*, 281 Mich App at 380-381. (citation omitted).

Citizens has never claimed mutual mistake. Instead, Citizens claims that USA's practices were intended to deceive purchasers of its insurance, which constituted fraud. The trial court accepted this argument, concluding that USA's practice reflected an "intent to defraud." Conversely, USA argues on appeal that its policy and practices were not deceptive, and Vandeinse was not mistaken about what coverages he was purchasing. Moreover, even if he was mistaken about the insurance coverages he purchased, a mistake of law is not a basis to reform a contract. Under these circumstances, we agree that the trial court erred when it reformed the insurance policy on grounds of fraud.

As a preliminary matter, we first differentiate between a mistake of fact and a mistake of law. Reformation is permissible on evidence of a mistake of fact, not a mistake of law. A mistake of law is "a mistake by one side or the other regarding the legal effect of an agreement." *Casey*, 273 Mich App at 398. Here, USA correctly asserts that the only mistake alleged by Vandeinse was his belief concerning his insurance coverage. Vandeinse stated after the accident that he believed he had "full coverage," because that is what he requested from his insurance agent. However, Vandeinse's mistaken belief that he had "full coverage" was simply a mistake about the legal effect of his insurance policy, which is a mistake of law—not fact. Therefore, Vandeinse is not entitled to reformation of the insurance policy.

Additionally, Citizens claims that Vandeinse made a mistake of fact because he mistakenly believed that his policy provided full coverage that could then be used to finance his car and register it with the Michigan Secretary of State. Even if, as Citizens argues, Vandeinse should not have been able to legally finance and register his car using the USA insurance policy, the fact remains that he did indeed finance his new car and register it with the Secretary of State. Vandeinse accomplished exactly what he intended to do when he purchased his insurance policy; thus, there was no mistake of fact at all. Because there is no mistake of fact sufficient to reform the contract, this Court need not determine whether USA committed fraud. Thus, reformation on this basis was error.

Even if fraud was attributable to Vandeinse's insurance agent, there is insufficient evidence to find USA liable for purposes of reformation. "An insurance policy constitutes a contractual agreement between the insurer and insured[,]" and "[w]hen such an agreement is facilitated by an independent insurance agent or broker, the independent insurance agent or

broker is considered an agent of the insured rather than an agent of the insurer." *West American Ins Co v Meridian Mut Ins Co*, 230 Mich App 305, 310; 583 NW2d 548 (1998) (citations omitted). Thus, "an agent's job is to merely present the product of [her] principal and take such orders as can be secured from those who want to purchase the coverage offered." See *Harts v Farmers Ins Exch*, 461 Mich 1, 8; 597 NW2d 47 (1999). In this case, the insurance agent's actions are not attributable to USA because she was independent and considered an agent of Vandeinse. She did not represent USA; rather, she presented USA's product to Vandeinse, who then purchased it knowing that it did not meet the requirements of the no-fault act. Therefore, reformation is not a cognizable remedy.

## C. REFORMATION FOR A VIOLATION OF LAW AND PUBLIC POLICY

USA also argues that the trial court erred when it reformed the insurance contract on the basis of a violation of the no-fault act and public policy. We agree.

"It is a 'bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent . . . a contract in violation of law or public policy.'" *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 256; 819 NW2d 68 (2012) (citation omitted). "[W]hen reasonably possible, this Court is obligated to construe insurance contracts that conflict with the no-fault act and, thus, violate public policy, in a manner that renders them 'compatible with the existing public policy as reflected in the no-fault act.'" *Id*. at 257 (citation omitted). Thus, reformation is the appropriate remedy when such a contract violates law or public policy. *Id*. A contract against public policy has been defined as:

> The question whether a contract is against public policy depends upon its purpose and tendency, and not upon the fact that no harm results from it. In other words, all agreements the purpose of which is to create a situation which tends to operate to the detriment of the public interest are against public policy and void, whether in the particular case the purpose of the agreement is or is not effectuated. For a particular undertaking to be against public policy actual injury need not be shown; it is enough if the potentialities for harm are present. [*Mahoney v Lincoln Brick Co*, 304 Mich 694, 705; 8 NW2d 883 (1943) (quotation marks and citation omitted).]

The question here is whether an insurer violates the Michigan no-fault act or public policy when it sells optional coverages without mandatory no-fault coverages, such as personal protection insurance, property protection insurance, and residual liability insurance. We conclude that it does not.

## 1. MICHIGAN NO-FAULT LAW

MCL 500.3101(1) provides:

> The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance. Security is only required to be in effect during the period the motor vehicle is driven or moved on a highway. Notwithstanding any other provision in this act, an insurer

-6-

that has issued an automobile insurance policy on a motor vehicle that is not driven or moved on a highway may allow the insured owner or registrant of the motor vehicle to delete a portion of the coverages under the policy and maintain the comprehensive coverage portion of the policy in effect.

"A policy of insurance represented or sold as providing security is considered to provide insurance for the payment of the benefits." MCL 500.3101(3).

The no-fault act is clear that an owner must register his or her vehicle in the state and "maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance" "during the period the motor vehicle is driven or moved on a highway." MCL 500.3101(1). With this in mind, "an insurer that has issued an automobile insurance policy on a motor vehicle that is not driven or moved on a highway *may* allow the insured owner or registrant of the motor vehicle to delete a portion of the coverages under the policy . . . ." *Id*. (emphasis added).

Section 3101(1) is clear that an insurer providing mandatory no-fault coverages has the discretion to "allow the insured owner or registrant of the motor vehicle to delete a portion of the coverages under the policy and maintain the comprehensive coverage portion" so long as the "motor vehicle . . . is not driven or moved on a highway." MCL 500.3101(1). The no-fault act, however, does not bar, let alone address, an insurer's ability to sell optional insurance coverages only. In this case, the USA policy did not provide the mandatory no-fault coverages to Vandeinse. Indeed, USA does not offer mandatory coverages to any customers; it only sells collision and comprehensive policies, which, according to Vandeinse's insurance agent, are to be bundled with other insurance policies for a reduced premium. Because the no-fault act does not bar this practice, it does not violate Michigan law, and we cannot read into the statute something that is not there.

The no-fault act's definition of an "automobile insurance policy" supports our conclusion that insurers may sell insurance policies that do not include mandatory no-fault coverages. The Legislature broadly defines automobile insurance:

(2) "Automobile insurance" means insurance for private passenger nonfleet automobiles which provides *any* of the following:

(a) Security required pursuant to section 3101.

(b) Personal protection, property protection, and residual liability insurance for amounts in excess of the amounts required under chapter 31.

(c) Insurance coverages customarily known as comprehensive and collision.

(d) Other insurance coverages for a private passenger nonfleet automobile as prescribed by rule promulgated by the commissioner pursuant to Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws. A rule proposed for promulgation by the commissioner pursuant to this section shall be transmitted in advance to each

member of the standing committee in the house and in the senate which has jurisdiction over insurance. [MCL 500.2102(2)(a) to (2)(d)(emphasis added)].

The no-fault act does not define automobile insurance as only those policies that include the mandatory coverages. Instead, the no-fault act recognizes that automobile insurance sold in the State of Michigan can be a policy that includes "any" of the listed coverages, including "[i]nsurance coverages customarily known as comprehensive and collision." MCL 500.2102(2)(c). This is precisely the policy USA sold to Vandeinse in this case. Without any provision under the no-fault act preventing insurers from issuing collision and comprehensive policies separately, we cannot conclude that USA's practice is against Michigan law.[2]

The dissent concludes that the no-fault act "implicitly" requires that every insurer provide policies that include the mandatory coverages, and then—and only then—can an insurer "delete" coverages after verification that the insured will not operate the vehicle on a roadway. However, the no-fault act does not state that every insurer must provide mandatory coverages. Instead, MCL 500.3101(1) requires that any insured who intends to drive on a highway must have the mandatory coverages. The no-fault act also allows insurers to delete coverages from policies that have already been issued. The dissent has not identified any statutory provision that requires insurers to provide mandatory coverages when issuing policies to insureds. If that was the Legislature's intent, it would have included such a provision in the no-fault act.

The financial responsibility act, MCL 257.501 *et seq.*, lends further support to our analysis. The financial responsibility act determines the "scope of coverage regarding an automobile accident" and addresses optional insurance coverage. *Integral Ins Co v Maersk Container Serv Co, Inc*, 206 Mich App 325, 330; 520 NW2d 656 (1994). Under the financial responsibility act, "[a]ny policy which grants the coverage required for a motor vehicle liability policy may also grant [optional coverage]." MCL 257.520(g). " 'Optional' coverage, for purposes of the financial responsibility act, consists of 'any lawful coverage in excess of or in addition to the [mandatory minimum] coverage specified for a motor vehicle liability policy.' " *Lake States Ins Co v Wilson*, 231 Mich App 327, 332 n 2; 586 NW2d 113 (1998), citing MCL 257.520(g) (citation omitted). The legislature has made it clear that when an insurer provides mandatory no-fault coverages, it may also offer optional coverages. MCL 257.520(g). Like the no-fault act, the financial responsibility act does not address whether an insurer may offer optional coverages only. With that said, MCL 257.520(j) states that "[t]he requirements for a motor vehicle liability policy may be fulfilled by the policies of 1 or more insurance carriers which policies together meet such requirements." Thus, MCL 257.502(j) expressly permits insureds to fulfill their insurance needs by way of multiple policies through more than one carrier. In this case, USA was permitted to offer a policy for sale that included only collision and

---

[2] In the same vein, Citizens has not shown that USA "represented or sold" its policy as mandatory no-fault coverage. See MCL 500.3101(3). Instead, USA notified Vandeinse in each of its insurance documents that the policy did not include mandatory no-fault coverages.

comprehensive insurance with the understanding that the insured must procure the mandatory no-fault coverages elsewhere before the vehicle is driven or moved on a highway.

The dissent is unpersuaded that the financial responsibility act provides any guidance to this issue. Instead, the dissent concludes that because USA's policy violates the no-fault act's "implicit" requirement that all insurers provide mandatory coverages, the no-fault act—not the financial responsibility act—controls. The dissent's argument, however, relies on the faulty premise that the no-fault act requires insurers to always provide mandatory coverages in its policies. This is simply not the case. The no-fault act is silent regarding the practice of selling only policies with optional coverages, and the financial responsibility act permits it. The dissent has construed a legislative requirement not supported by the text of the no-fault act.

Nevertheless, after finding an irreconcilable conflict between USA's coverages and the requirements of the no-fault act, the dissent relies on *Citizens Ins Co of America v Federated Mut Ins Co*, 448 Mich 225; 531 NW2d 138 (1995), to underscore its point that the authorizing language found in the financial responsibility act cannot validate a policy that violates the no-fault act. We agree with the dissent that an insurance policy contravening the no-fault act cannot be justified by the financial responsibility act. See *id*. at 232 ("An insurance policy that is repugnant to the clear directive of the no-fault act otherwise cannot be justified by the financial responsibility act."). However, in this case, the financial responsibility act simply addresses a gap that the no-fault act has left open—whether insurers can sell policies that include only optional coverages. The financial responsibility act, though, clearly allows insurers to combine multiple automobile policies in order to fulfill the requirements of the no-fault act. See MCL 257.502(j). Therefore, unlike in *Citizens*, where a residual liability policy clearly violated the express terms of the no-fault act,[3] there is no such violation here, and the financial responsibility act provides proper guidance for our analysis. See *Citizens*, 448 Mich at 232 (stating that "the financial responsibility act continues to present legitimate methods by which vehicle owners may satisfy the insurance obligations created by the no-fault act," and MCL 257.502(j) provides "a method by which an owner may allocate insurance costs among various policies that he may have purchased for a particular vehicle").

A similar question was previously addressed by this Court in relation to bobtail insurance. This Court has determined that bobtail insurance policies, which do not provide "full coverage," may nonetheless be sold separate from a mandatory no-fault policy. *Integral*, 206 Mich App at 331. In *Integral*, this Court stated that "[a]dmittedly, the policy itself does not

---

[3] The *Citizens* Court made clear that when an owner or registrant obtains residual liability insurance, the policy "must afford coverage for enumerated types of loss caused by or arising from the '*use* of a motor vehicle.' " *Citizens*, 448 Mich at 229, quoting MCL 500.3009. The Court concluded that the policy at issue in that case, which denied residual liability coverage for all persons—except those who were uninsured or underinsured, was a clear violation of the residual liability requirements under MCL 500.3009. *Id*. at 229-231, 229 n 2. Therefore, the policy contravened the no-fault act, and no provision in the financial responsibility act could save the policy.

provide full coverage." *Id*. However, because MCL 257.502(j) allows insureds to meet the requirements for a motor vehicle liability policy through more than one insurance carrier, and because the truck driver was covered by both a bobtail policy and a policy providing no-fault benefits through another carrier, the practice of selling only bobtail insurance was not against the law. *Integral*, 206 Mich App at 331-332. We reach the same conclusion in this case.[4] While Vandeinse did not procure a no-fault policy with the mandatory coverages, USA was not precluded from selling optional insurance coverages in order to satisfy customers who chose to purchase insurance policies from multiple carriers as allowed under MCL 257.502(j). Thus, USA's practice of selling optional insurance coverages is not violative of Michigan law.

## 2. PUBLIC POLICY

An insurance contract may violate public policy if "the purpose of which is to create a situation which tends to operate to the detriment of the public interest." *Mahoney*, 304 Mich at 705 (quotation marks and citation omitted). Citizens argues that if USA is permitted to continue providing optional coverages only, more cases like this will arise—cases where the Facility and the assigned insurers are left footing the bill. Citizens claims insureds will continue to mistakenly believe that they purchased full-coverage insurance and are permitted to lawfully drive on Michigan roads.

While we agree that Citizens raises real concerns, the fact remains that the Michigan Legislature has not expressly barred insurance companies from offering optional coverages as stand-alone policies. The parties readily acknowledge that there are circumstances when a person may want to purchase limited coverages that do not meet the requirements of the no-fault act. For instance, limited coverage is entirely appropriate when the vehicle will not be operated on public roads or if, as asserted by Vandeinse's insurance agent, the insured can obtain less expensive mandatory and optional coverages from multiple carriers. MCL 500.3101(1) puts the onus on the insured to obtain the necessary coverages to meet the requirements of the no-fault act.[5] The legislature has not imposed the same duty on insurers. To do so would require insurers to verify that every insured who has purchased polices from more than one carrier has procured all the necessary insurance needed to satisfy the no-fault act. It is the role of the legislature to balance these types of policy considerations, not this Court. Here, USA's policy is crystal clear that it included coverage for physical damage only and did not meet the requirements of the no-fault act. Vandeinse initialed these contract provisions, indicating he understood the scope of the

---

[4] The dissent highlights the fact that in *Integral* the bobtail policy and the no-fault policy both provided mandatory coverages—just at different times based on the use of the truck. While this is certainly true, it nonetheless supports our conclusion that the financial responsibility act allows more than one insurance policy, which on its own would not meet the requirements of the no-fault, to fulfill the requirements of the no-fault act.

[5] While not guiding on our analysis, we note that under the Michigan no-fault act, Vandeinse was neither an owner nor a registrant of the motor vehicle when he purchased the USA insurance policy. Thus, at the time he purchased the policy, he did not yet have an obligation to secure mandatory coverages for the vehicle. MCL 500.3101(1).

coverage he purchased. Vandeinse's insurance agent even testified that she explained to Vandeinse what each type of coverage entailed. There was no misrepresentation. While it is true Vandeinse was able to purchase and register his vehicle using USA's policy, this was not because USA failed to alert Vandeinse or anybody else that the policy did not conform to the no-fault act. The insurance application, the insurance policy itself, and the certificate of insurance all provided notice that the USA policy did not comply with the requirements of the no-fault act. The obligation is on the owner or registrant to procure the proper no-fault coverages. MCL 500.3101(1). Therefore, the trial court erred when it reformed USA's policy as violative of public policy.

## III. ATTORNEY FEES

USA also appeals the trial court's award of attorney fees to Citizens. Because we conclude that the trial court erred when it reformed the insurance policy, Citizens is no longer a prevailing party and attorney fees are not warranted.

"A trial court's decision to grant or deny a motion for attorney fees presents a mixed question of fact and law." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 689-690; 828 NW2d 400 (2012). The trial court's findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id*. at 690. With that said, we ultimately review a trial court's decision to award attorney fees for an abuse of discretion. *Id*. "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

The trial court did not cite a statute or court rule that would permit the award of attorney fees, and no such authority is advanced on appeal. Instead, the trial court concluded that courts have long permitted the award of attorney fees when there is fraud or unlawful conduct. "In Michigan, it is well-settled that the recovery of attorney fees is governed by the 'American rule.' " *Burnside v State Farm Fire and Cas Co*, 208 Mich App 422, 426; 528 NW2d 749 (1995), citing *Matras v Amoco Oil Co*, 424 Mich 675, 695; 385 NW2d 586 (1986). "Under the American rule, attorney fees are generally not allowed, as either costs or damages, unless recovery is expressly authorized by statute, court rule, or a recognized exception." *Burnside*, 208 Mich App at 426-427. "An exception to this rule permits a plaintiff to recover as damages from a third party the attorney fees the plaintiff expended in a prior lawsuit the plaintiff was forced to defend or prosecute because of the wrongful acts of the third party." *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 468; 487 NW2d 807 (1992), citing *Warren v McLouth Steel Corp*, 111 Mich App 496, 508; 314 NW2d 666 (1981). However, "[w]here there is no evidence to support a claim that a third party's wrongdoing caused the prior litigation, recovery of attorney fees under this exception is improper." *Bonner*, 194 Mich App at 469, citing *Warren*, 111 Mich App at 508. Because we have concluded that USA engaged in no wrongdoing, attorney fees are not permissible. Moreover, it is a fundamental principle that attorney fees and costs may only be awarded to the prevailing party. See, e.g., MCL 600.2591(1); MCR 2.625(A)(1). Therefore, the

trial court erred when it awarded attorney fees and costs to Citizens. We reverse the trial court's orders granting Citizens's motion for summary disposition and motion for attorney fees, and remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Michael J. Riordan