*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID E. CHRISTENSEN, P.L.L.C.,

       Plaintiff-Appellant,

v

PIONEER STATE MUTUAL INSURANCE
COMPANY,

       Defendant/Third-Party Plaintiff-
       Appellee,

and

HURLEY MEDICAL CENTER,

       Third-Party Defendant/Third-Party
       Plaintiff-Appellee,

and

AMELIA WARREN,

       Third-Party Defendant.

UNPUBLISHED
March 4, 2021

No. 351737
Washtenaw Circuit Court
LC No. 19-000330-CZ

Before: GLEICHER, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Plaintiff David E. Christensen, P.L.L.C., appeals as of right the trial court's order granting defendant/third-party plaintiff Pioneer State Mutual Insurance Company's, and third-party defendant Hurley Medical Center's, motions for summary disposition, denying plaintiff's motion for summary disposition, and dismissing plaintiff's complaint against Pioneer with prejudice. We affirm.

## I. FACTS & PROCEDURAL HISTORY

Plaintiff is a law firm that third-party defendant, Amelia Warren, retained to seek personal-injury protection (PIP) benefits under the no-fault act for injuries she sustained as a passenger in an automobile accident. Pioneer State Mutual Insurance Company is the no-fault insurer that owed Warren coverage for her injuries. Warren received medical treatment from, among other providers, Hurley Medical Center. Plaintiff represented Warren on a contingency basis when Pioneer did not timely pay no-fault PIP benefits on her behalf. Under that agreement, Warren agreed that plaintiff was entitled to a fee of one-third of "the value of all past and future benefits [it] recover[ed] for" Warren.

One of plaintiff's attorney employees, Deborah Tonelli, testified by affidavit that plaintiff contacted Pioneer on June 25, 2018 to "set up Ms. Warren's claim" for PIP benefits, and that Pioneer replied that it would not provide coverage until it completed an investigation. The same day, Tonelli continued, plaintiff contacted several of Warren's medical providers, including Hurley, and told them to bill Pioneer as the "primary" insurer. Tonelli did not assert that plaintiff informed Hurley that it was pursuing benefits from Pioneer or anyone else, or that plaintiff was asserting any claim to a lien on any payments. However, Tonelli testified that plaintiff sent a "letter of representation" to Pioneer asserting a "lien upon any and all settlements and/or judgments resulting from this occurrence" to secure payment of the contingent attorney fee Warren agreed to pay plaintiff.

On October 1, 2018, plaintiff sent a letter to Warren's medical providers, including Hurley, requesting billing records for Warren's treatments, but the letter did not claim that plaintiff asserted any lien or even mentioned pursuing PIP benefits. Tonelli testified that in 2018, there were two other contacts with Pioneer to discuss payment of Warren's PIP benefits, on June 27 and November 11.

In January 2019, Pioneer issued a check for $210,800.02 payable to Hurley alone, and sent it directly to Hurley. No portion of the proceeds was reserved in connection with the lien plaintiff asserted. Pioneer paid another $33,000 to satisfy a Medicaid lien for Warren's treatment. No funds from this payment were paid to plaintiff, either. In March 2019, two months after Pioneer paid Hurley, plaintiff sued on Warren's behalf for unpaid PIP benefits. Later in March, plaintiff sent Hurley another letter asking for medical records—this letter also made no mention of any claimed lien or plaintiff's pursuit of PIP benefits. On March 26, 2019, Hurley sent plaintiff a letter stating that it did not wish to retain plaintiff's services to obtain payment for Warren's bills from Pioneer.

After receiving no payment for its claimed attorney-fee lien from Pioneer or Hurley, plaintiff sued Pioneer over its alleged payment to Hurley and other providers in what plaintiff alleged to be a violation of its attorney's charging lien. Pioneer then filed a third-party complaint against Hurley, arguing that because Pioneer would have deducted any lien payments to plaintiff from its payment to Hurley, Hurley should be liable for any amount Pioneer might be ordered to pay plaintiff. Hurley, in turn, filed a third-party complaint making a similar claim against Warren, asserting that any payment it was required to make to plaintiff would reduce the amount credited toward Warren's bills, leaving Warren responsible for any amount Hurley was required to pay toward her attorney fee to plaintiff.

Plaintiff, Hurley, and Pioneer all filed motions for summary disposition. Plaintiff argued that it clearly had a lien that Pioneer failed to respect, and that Pioneer was liable, as a matter of law, for $71,568.75 to satisfy that lien. Pioneer argued that plaintiff's letter asserted a lien against a "settlement and/or judgment" and Pioneer's uncontested direct payment to Hurley was not made in connection with any settlement or judgment, and also that plaintiff provided no services with respect to the payment of Hurley's bills. Hurley's motion also argued that plaintiff did not "recover" any payments and that there was no "settlement" or "judgment," and also asserted that it was apparently undisputed that Hurley was never on notice of plaintiff's claimed lien at any time before plaintiff filed this lawsuit.

The trial court adopted the reasoning of Hurley and Pioneer and entered a written order granting Hurley's and Pioneer's motions for summary disposition and denying plaintiff's motion. Plaintiff now appeals.

## II. ANALYSIS

Plaintiff argues that the trial court improperly granted summary disposition in Hurley's and Pioneer's favor. We disagree.

We review rulings on summary disposition motions de novo. See *Corley v Detroit Bd of Ed*, 470 Mich 274, 277-278; 681 NW2d 342 (2004). "A trial court properly grants the motion when the submitted evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Bill & Dena Brown Tr v Garcia*, 312 Mich App 684, 698; 880 NW2d 269 (2015). Whether to impose a charging lien, however, is a matter of the trial court's discretion, which we review for an abuse of that discretion. *Reynolds v Polen*, 222 Mich App 20, 24; 564 NW2d 467 (1997). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak v Daimlerchrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006).

"While not codified in a statute, the existence of a common-law attorneys' charging lien is recognized in Michigan." *George v Sandor M Gelman, PC*, 201 Mich App 474, 477; 506 NW2d 583 (1993). "The special or charging lien is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *Id*. at 476. "The attorneys' charging lien creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services." *Id*.

"In Michigan, it is well-settled that the recovery of attorney fees is governed by the 'American rule.'" *Burnside v State Farm Fire & Cas Co*, 208 Mich App 422, 426; 528 NW2d 749 (1995). "Under the American rule, attorney fees are generally not allowed, as either costs or damages, unless recovery is expressly authorized by statute, court rule, or a recognized exception." *Id*. at 426-427. In *Miller v Citizens Ins Co*, 288 Mich App 424; 794 NW2d 622 (2010), aff'd in part, rev'd in part on other grounds 490 Mich 905; 804 Mich 740 (2011), we explained that an exception to the "American rule" exists when the party prevailing in an action secures a "common fund" for the benefit of that party as well as others, such as medical providers who give care to a no-fault beneficiary. *Id*. at 437. We emphasized that a provider not wishing to pay one-third of the funds recovered on its behalf to an insured's attorney could pursue its own claim, intervene, instruct the insured's attorney not to pursue a claim on its behalf, or notify the insurer that the

insured's attorney does not represent the provider's interests. *Id*. at 438. In addition, "[a]n attorney's lien is not enforceable against a third party unless the third party had actual notice of the lien, or unless circumstances known to the third party are such that he should have inquired as to the claims of the attorney." *Doxtader v Sivertsen*, 183 Mich App 812, 815; 455 NW2d 437 (1990).

Here, there is no evidence that plaintiff asserted any lien to Hurley. Tonelli's affidavit does not suggest that plaintiff ever informed Hurley of a lien against any proceeds it might receive for Warren's treatment. Moreover, there is no evidence in the record that Hurley had any reason to know plaintiff's services were necessary to obtain PIP benefits. Although there is a statement in Tonelli's affidavit that plaintiff contacted Hurley and told Hurley to send its bills to Pioneer, this does not suggest that there was any dispute with Pioneer about coverage, or that plaintiff played any part at all in obtaining it. Thus, the trial court properly granted Hurley summary disposition.

With regard to Pioneer, plaintiff's letter informed Pioneer that it had a lien against any sums owed only by way of a judgment or settlement. Plaintiff did not sue for PIP benefits until two months *after* Pioneer made the payment to Hurley that is at issue here, and there is no evidence at all that the payment was made pursuant to a settlement. In fact, the record shows that Hurley submitted its bills to Pioneer, and Pioneer paid them. Plaintiff makes much of Pioneer's having paid Hurley slightly less than the full amount billed, but that is not necessarily indicative of a settlement. Indeed, it is more likely that the reduced payment was a function of the well-known tendency of insurance companies to unilaterally decide that the proper, "reasonable" amount owed for services is a lesser sum, and to pay only the unilaterally determined amount as payment in full. See, e.g., *Spectrum Health Hosp v Farm Bur Mut Ins Co of Mich*, ___ Mich App, ___; ___ NW2d ___ (2020) (Docket No. 347553 & 348440) (plaintiff hospital sued no-fault insurer that unilaterally determined that the proper, "reasonable" amount due was 80 percent of the billed amount). The only evidence plaintiff offers in support of its assertion that there was a dispute is that Pioneer did not immediately pay Hurley's bills when presented with them, but instead did so only after its investigation of the claim. Under these circumstances, it was reasonable for Pioneer to conclude that the payment to Hurley—which was not made as the result of a judgment or settlement—was not subject to a lien. This is particularly so given that plaintiff itself asserts that Pioneer's claims adjuster was not accustomed to dealing with attorney charging liens. If plaintiff expected Pioneer to apply the lien to *any* funds Pioneer paid, plaintiff could very easily have indicated such to all of the parties involved. Plaintiff did not, but nevertheless faults Pioneer for not guessing that apparently plaintiff meant to do so.

In addition, the funds due Hurley cannot be said to have been part of a "common fund" generated by plaintiff's services. Hurley did not hire its own counsel to pursue payment from Pioneer, and did not object to plaintiff's representation until well after it received payment. However, as previously discussed, there is no evidence that Hurley had notice of plaintiff's intentions to seek PIP benefits and the record is devoid of any evidence that plaintiff's services were even necessary to obtain, or had any impact upon, Pioneer's decision to provide payment to Hurley. The record shows that Hurley billed Pioneer and Pioneer paid Hurley. No lawsuit or settlement negotiations were required. By plaintiff's own affidavit evidence, its services in support of that payment were, at best, a phone call to "set up the claim," two or three other phone calls to Pioneer, and a letter or two to Hurley seeking medical and billing records. For a few phone calls and a few letters, plaintiff expects over $71,000—which presumably Warren would owe Hurley if

plaintiff were to successfully enforce its lien. See *Miller*, 490 Mich at 905. There is no evidence that plaintiff's services had *any* impact on securing payment of Hurley's bills, let alone that there were $71,000 worth of services or that plaintiff even put Hurley on notice of its intention to seek payment for Hurley from Pioneer. Therefore, plaintiff cannot establish entitlement to payment of its fees under the common-fund doctrine from Pioneer's payment to Hurley.

## III. CONCLUSION

The trial court properly granted summary disposition in favor of Pioneer and Hurley. Accordingly, we affirm.

/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan